GROVE, Appellant,

v.

FRESH MARK, INC., Appellee.

[Cite as *Grove v. Fresh Mark, Inc.,* 156 Ohio App.3d 620, 2004-Ohio-1728.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 03–CO–54.

Decided March 30, 2004.

Guarnieri & Secrest, PLL, and Michael D. Rossi; George N. Kafantaris, for appellant.

Calfee, Halter & Griswold and Richard P. Goddard, for appellee.

GENE DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Cindy Grove, appeals from a judgment of the Columbiana County Common Pleas Court granting summary judgment in favor of defendant-appellee, Fresh Mark, Inc., on appellant's claim that appellee violated Ohio's Whistleblower Statute.

{¶ 2} Appellant was employed by appellee as a human resources administrator at its meat processing plant, Carriage Hill Foods, located in Salem, Ohio. Her duties included completing I–9 Employment Eligibility Forms ("Form I–9") for new employees. The Immigration and Reform Act requires employers to verify that new employees are allowed to lawfully work in the United States. This is accomplished by recording the employee's citizenship, permanent residency, or visa status and identification documents on a Form I–9. Form I–9 lists the types of documents that are acceptable to establish their identity and employment authorization. The employee chooses from that list which documents they wish to produce, and the employer examines them for authenticity and copies them.

{¶ 3} At some point in time, appellant came to the conclusion that appellee was "falsifying records and counterfeiting social security cards for the purpose of employing illegal aliens in its meat processing business." (Second Amended Complaint, at 2, ¶ 3.) On October 20, 2001, appellant alleges that she filed a written report (via an e-mail) with a supervisor, Bob Goode, providing sufficient detail to identify and describe violations of the immigration laws. (Affidavit of Cindy Grove, ¶ 6.) Appellant also filed with the Immigration & Naturalization Service ("INS") a written report, including human resource records, notes, and Form I–9 documentation (copies of which she did not retain) that also provided sufficient detail to identify and describe violations of the immigration laws. (Affidavit of Cindy Grove, ¶ 8.)

{¶ 4} On October 29, 2001, supervisor Brian Weiss terminated appellant, specifically referring to her October 10, 2001 "report" and commenting that she should not have sent the e-mail.

{¶ 5} On November 29, 2001, appellant filed this wrongful-discharge action against appellee. On March 22, 2002, appellant filed a second amended complaint, which added Mark Bissett as a new-party plaintiff. It also added as new-party defendants some of appellant's co-employees and supervisors. Appellant presented two wrongful-discharge claims under Ohio law and claims predicated on alleged violations of Section 1962, Title 18, U.S.Code, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The case was removed to federal court, where appellee asserted defamation counterclaims against both appellant and Bissett. On November 22, 2002, appellee filed a motion to dismiss all of appellant's and Bissett's claims on behalf of all defendants.

{¶ 6} Following extensive discovery, appellee's counterclaims were settled and dismissed. On February 11, 2003, at Bissett's request, the federal court dismissed all of his claims with prejudice.

{¶ 7} On March 21, 2003, appellee filed a motion for summary judgment regarding all of appellant's claims. On April 20, 2003, the federal court granted appellee's motion to dismiss with respect to appellant's federal RICO claim. The federal court remanded appellant's state-law wrongful-discharge claims against appellee to the Columbiana County Common Pleas Court.

{¶ 8} On September 4, 2003, the trial court granted appellee's motion for summary judgment. This appeal followed.

{¶ 9} Appellant's sole assignment of error states:

{¶ 10} "The trial court erred in dismissing Plaintiff–Appellant's Second Amended Complaint on summary judgment (R. 9/4/03, Judgment Entry)."

STANDARD OF REVIEW

{¶ 11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1976), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 12} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 13} The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all of the evidentiary material in a light most favorable to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 14} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 15} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### R.C. 4113.52(A)(1) CLAIM

{¶ 16} Appellant pursued her claim under the Ohio Whistleblower Statute, specifically R.C. 4113.52(A)(1).[1] In *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 246–249, 652 N.E.2d 940, the Ohio Supreme Court described how the statute works as follows:

{¶ 17} "Ohio's Whistleblower Statute, R.C. 4113.52, provides specific procedures an employee must follow to gain statutory protection as a whistleblower. R.C. 4113.52(A)(1)(a) addresses the situation where an employee in the course of his or her employment becomes aware of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employer has the authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm or a hazard to public health or safety or is a felony. Under such circumstances, R.C. 4113.52(A)(1)(a) requires that the employee orally notify his or her supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report that provides sufficient detail to identify and describe the violation. If these requirements have been satisfied and the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier, the employee may then file a written report with the prosecuting authority of the county or

---

1. {¶ a} R.C. 4113.52 provides:

{¶ b} "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee' may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

{¶ c} "(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard."

municipal corporation where the violation occurred or with some other appropriate person specified in R.C. 4113.52(A)(1)(a).

{¶ 18} "Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation both orally and in writing. An employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities. If the employee provides the employer with oral notification and a written report, the employee may be entitled to the protections of the whistleblower statute for reporting the information to outside authorities only if the employer has failed to correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier. R.C. 4113.52(A)(1)(b) contemplates that the employer will apprise the employee of its efforts to correct the violation. That provision mandates that if an employee makes a report to his or her employer under R.C. 4113.52(A)(1)(a), the employer, within twenty-four hours after the oral notification was made or the report received or by the close of business on the next regular business day, whichever is later, must provide written notice to the employee of any efforts the employer made to correct the alleged violation or hazard or of the absence of the alleged violation or hazard. Only after all these various procedures and requirements have been satisfied, and only if the employer has not corrected the violation or made a reasonable and good faith effort to correct the violation may the employee report the violation to outside authorities—but only those authorities specified in R.C. 4113.52(A)(1)(a).

{¶ 19} "Therefore, to restate, R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may 'blow the whistle' to outside authorities. Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly,

may not bring a wrongful discharge action pursuant to R.C. 4113.52." (Emphasis and footnote omitted.)

{¶ 20} In addition to explaining how the statute works, the court also ultimately held that "[i]n order for an employee to be afforded protection as a 'whistle-blower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." Id. at the syllabus.

{¶ 21} In this case, appellant argues that she provided appellee with sufficient notice of the alleged violations of federal immigration laws.[2] As proof that she submitted the written report required under the statute, she points to the e-mail she sent to another supervisor, Bob Goode, on October 20, 2001.

{¶ 22} Appellee argues that the e-mail did not provide sufficient detail to identify and describe the violations appellant alleged. Appellee also argues that appellant was discharged for legitimate non-discriminatory reasons.

{¶ 23} Before reviewing whether appellant provided the required notice to appellee, it is important first to examine whether appellant ever established the underlying alleged violations. Appellant alleged that appellee was "falsifying records and counterfeiting social security cards for the purpose of employing illegal aliens in its meat processing business * * *." (Second Amended Complaint, at 2, ¶ 3.) Appellant also claimed that appellee and others "conspired to and, in fact, engaged in a pattern and practice of knowingly hiring and continuing to employ those unauthorized workers at its 'Carriage Hill Foods' plant in Salem, Ohio and elsewhere in and around Northeast Ohio." (Second Amended Complaint, at 5, ¶ 3.)

{¶ 24} Appellant presented no evidence in the record to support these claims. She presented no evidence establishing that appellee engaged in a conspiracy to recruit, hire, or employ any persons not authorized to work in the United States. In her own deposition testimony, appellant could not specify any facts based on personal knowledge that would support her claim that appellee and others counterfeited Social Security cards or falsified employment records. Nor could she establish that any of the employees there were not authorized to work in the United States. Additionally, appellant presents no evidence that the INS or any other law enforcement agency even investigated her claims or, if so, found violations. Passionate argument of counsel is not evidence.

{¶ 25} In contrast, appellee presented statements of the individual defendants that no employee ever processed, prepared, or transmitted to anyone any

---

2. On appeal, appellant has not presented as an issue or challenged the dismissal of her public-policy claim.

employment records or identification documents which, to their knowledge, contained any false information. They also stated that appellee never required, authorized, or permitted anyone to hire any person who was not lawfully authorized to work in the United States.

{¶ 26} Turning now to the written reporting requirements of Ohio's Whistleblower Statute, it is apparent that appellant did not strictly comply with the statute's requirements. As proof that she filed a written report that provided sufficient detail to identify and describe the violations, appellant points to the e-mail she sent to another supervisor, Bob Goode, on October 20, 2001. In its entirety, it states:

{¶ 27} "There is a major reason I want to get out of the office. I'm going to request a meeting with you Drake, Rick and Brian when I get back from vacation. I'm being accused by Brian of divulging confidential information. I haven't done this. I'm being accused of standing by his door to listen to his conversations. The only time I have done this is so that I can hear if Rick is in there. When Rick is in there, I do not interrupt him. If it's Tracey, I'll knock on the door. I'm being accused of going into Tracey's office to put my ear against the wall to listen to his conversations . . . what can I say? . . . I know where this one came from. In my opinion, he is planning on firing me real soon. Had I not kept my confidentiality, we would have been busted a long time ago when I was asked to change an employee's identity (which I refused to do because I could no longer say that it 'looked real to me.') I need your help. We, not just you and me, know that things are messed up in HR. I might not have a degree but I have a brain. Because I have a brain, I'm on my way out the door. I see it coming."

{¶ 28} Appellant's e-mail does loosely describe the unlawful actions of appellee which she allegedly reported and for which she was allegedly fired. Absent from the e-mail are the details of the various allegations she set forth in her complaint.

{¶ 29} Last, appellee presented evidence in the form of statements from appellant's supervisors that she was discharged for legitimate non-discriminatory, business reasons. They were that (1) she eavesdropped on confidential conversations of her supervisor; (2) her supervisor believed she was dissatisfied with her position; (3) confidential personnel information to which appellant had access was being disseminated to production workers; and (4) a more qualified person with the company was interested in appellant's position. In her deposition testimony, appellant acknowledged eavesdropping on one conversation and to wanting out of the human resources department.

{¶ 30} In sum, appellant failed to strictly comply with the dictates of R.C. 4113.52 and, therefore, cannot be afforded protection as a whistleblower under the statute. *Contreras,* supra.

{¶ 31} Accordingly, appellant's sole assignment of error is without merit.

{¶ 32} The judgment of the trial court is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and VUKOVICH, J., concur.