OPINION
{¶ 1} The instant appeal stems from a final judgment of the Mahoning County Court of Common Pleas. Appellants, John Spada, Connie Spada, and Net Solutions, Inc., seek the reversal of the following two aspects of that judgment: (1) the trial court's decision to grant summary judgment in favor of appellees, Network Services Integration Group, LLC, and Hill, Barth King, LLC, as to all pending claims in the underlying case against them; and (2) the trial court's determination to grant partial judgment on the pleadings in favor of appellees as to appellants' claim of tortious interference with business relationships.
 {¶ 2} The subject matter of this appeal primarily concerns the legal propriety of certain actions taken by Hill, Barth King, LLC ("HBK") in regard to the creation of NSI Group, LLC ("NSI Group") as an Ohio corporation in June 2000.[1] The decision to form this new company was primarily made by Michael Meloy ("Meloy"), who was the primary owner of the entity at the time of its inception. In forming NSI Group, Meloy essentially hoped to continue to provide certain computer services to a clientele that he and Joseph Ross (`Ross") had developed in northeastern Ohio over the prior few years. Meloy hired HBK to assist him and Ross in dealing with some of the financial problems in "starting-up" the new company.
 {¶ 3} Meloy and Ross began to create this clientele while they were employed by Entre Computer Services in the middle of the 1990s. During the course of this employment, Meloy worked as a salesman for the company, while Ross performed the basic duties of a computer technician. By 1998, Entre Computer Services began to experience certain financial difficulties; as a result, Meloy and Ross took steps to find other positions in the computer field. Eventually, they decided to accept positions with Net Solutions, Inc. ("Net Solutions"), a sole proprietorship based in Summit County, Ohio. Meloy's decision to accept this particular job was predicated in part upon the fact that he had previously worked with the company's owner, John Spada ("Spada").
 {¶ 4} Since its formation in 1995, Net Solutions had been engaged in the business of installing and maintaining network computer software and equipment for various types of organizations, including small commercial enterprises. Prior to 1998, Net Solutions's clientele was limited to the general Summit County region, and Spada ran the business primarily from his home. However, after Meloy and Ross joined the company that year, Spada decided to open a separate office in Mahoning County. This new location was eventually used to house at least five employees, and was basically operated by Meloy and Ross. From this office, they were able to continue their working relationships with the clients they had had at Entre Computer Services in that area. As a result, the extent of Net Solutions's business increased over the next two years.
 {¶ 5} According to Meloy and Ross, prior to accepting their positions at Net Solutions, they had negotiated an agreement with Spada under which he was required to transfer a forty-five percent interest in the company to Meloy and a five-percent interest to Ross. According to Spada, Meloy and Ross were hired as mere employees of his company, and that any discussions concerning the transfer of an equity interest did not take place until they had already started working for the company. According to Meloy and Ross, notwithstanding the fact that they were able to increase the company's clientele, Spada "dragged his feet" in transferring the company stock pursuant to their prior agreement. However, under Spada's version of events, the three of them were never able to reach a final agreement as to the extent and manner of the transfer of an equity interest in Net Solutions.
 {¶ 6} In May 2000, the disagreement over the proposed equity transfer became worse when Spada informed Meloy and Ross that he intended to raise his yearly salary from the company substantially. Even though Spada also intended to raise Meloy's salary, Meloy himself did not believe that the raises were appropriate in light of the company's financial situation, and continued to push for the transfer of the equity interest. Pursuant to Meloy's version of events, when no agreement on the proposed transfer could be reached by the end of that month, Meloy orally informed Spada that he and Ross would be terminating their employment with Net Solutions and then forming a new corporation to carry on their work. According to Spada, although he was aware that an agreement on the equity matter had not been finalized, he was unaware that Meloy and Ross were considering the possibility of starting a company which would compete with his entity.
 {¶ 7} On May 31, 2000, Meloy was introduced to Phillip Carlon ("Carlon"), who is one of the principal owners of HBK and HBK Professional, LLC. At that time, the two men had a conversation concerning the type of problems Meloy and Ross might encounter in creating their new company. They also discussed what type of assistance HBK might be able to provide. A few days after this conversation, Carlon produced a memorandum which he forwarded to Meloy and a local attorney who had previously performed work for HBK. As part of this memorandum, Carlon requested the attorney to indicate if there could be any legal problems with Meloy and Ross "taking" their clients' business from Net Solutions to the new company. The memorandum also asked if there would be any problems with the fact that the proposed name of Meloy's new company might contain the initials of Spada's company.
 {¶ 8} During the early part of June 2000, Carlon referred Meloy to the local attorney for assistance in the legal formation of the new company. This process was completed on June 12, 2000, when NSI Group was incorporated under Ohio law. On that same date, a Net Solutions's employee who worked at the Mahoning County office sent a letter to a local Net Solutions' customer. This letter stated that a new "alliance" had been formed which would enable the Mahoning County office to provide better services to its present clients. The letter also stated that, as of July 1, 2000, all new invoicing would be done in the Mahoning County office. Finally, the letter indicated that the name of their entity would be slightly altered from "Net Solutions, Inc." to NSI Group.
 {¶ 9} The foregoing letter was written while the employee in question was still working for Net Solutions. However, when Spada learned of the specific steps Meloy and Ross were taking, he relieved the two men of their positions with Net Solutions on June 13, 2000. In addition, three days later, Spada terminated the employment of the other three employees who had also worked at the Mahoning County office. Included in this group of employees was the individual who had written the letter to the client.
 {¶ 10} Notwithstanding the fact that all of the employees at the Mahoning County office were terminated on a Friday, each of them returned to work at that office the following Monday. Moreover, these employees continued to work on the identical projects which they had been completing for Net Solutions the prior week. For example, even though a purchase order for a computer server had been processed for a Net Solutions's client on June 12, a new order for the same item was issued the next week. The only difference between the two orders was that the second purchase order was written on stationary for NSI Group.
 {¶ 11} Hence, in essence, the former employees of Net Solutions, including Meloy and Ross, tried to immediately change the Mahoning County office into the principal place of business for NSI Group. Initially, Spada was able to have the employees evicted from the premises. For a short period, the three employees had to perform their respective duties for NSI Group at a separate location provided by HBK. However, because Meloy and Ross were partial owners of the premises for the Mahoning County office, the three employees were eventually able to return that location.
 {¶ 12} In addition to providing office space on a temporary basis, HBK also assisted the new company in a number of other respects. For example, HBK loaned NSI Group the sum of $75,000 during its first two months of operation so that the company could meet its payroll and make certain insurance payments. In behalf of HBK, Carlon also signed a credit application for the company so that it could receive certain computer equipment for distribution in its business. Finally, HBK assisted NSI Group in opening its business accounts with a local bank.
 {¶ 13} During its first week of business, NSI Group was able to obtain equipment orders for over $100,000 from clients which had been customers of Net Solutions. Despite this, the new company still continued to have serious financial difficulties over the next few months. During this time frame, Carlon and other HBK officials had general discussions with Meloy about the possibility of either a joint venture between NSI Group and HBK, or an out-right purchase of the new company.
 {¶ 14} When other potential agreements to purchase NSI Group could not be finalized, the owners of HBK Professional, LLC, the parent company of HBK, decided to buy the struggling business from Meloy and Ross. Specifically, HBK Professional formed a new entity, Network Services 
Integration Group, LLC, to assume the daily business of NSI Group, with Meloy and Ross staying on to run the basic operation. The purchase of NSI Group was completed on November 1, 2000.
 {¶ 15} Even before the negotiations for the purchase of NSI Group had officially begun, Net Solutions had initiated the underlying civil case in the Summit County Court of Common Pleas against Meloy, Ross, and NSI Group only. In its original complaint, Net Solutions asserted seven claims of relief against the three defendants, basically alleging that they had conspired to improperly deprive Net Solutions of its business in Mahoning County. In its prayer for relief, Net Solutions sought compensatory damages, punitive damages, and an injunction to stop NSI Group from dealing with its clients in Mahoning County.
 {¶ 16} After the venue of the underlying case had been transferred from Summit County to Mahoning County in September 2000, Meloy, Ross, and NSI Group filed their answer to the original complaint. As part of this submission, these defendants named John and Connie Spada as third-party defendants in the matter, and asserted four counterclaims against them. Meloy, Ross, and NSI Group alleged that John Spada had reneged on his promise to give them an equity interest in Net Solutions.
 {¶ 17} After engaging in preliminary discovery for nearly one year, Net Solutions moved the Mahoning County trial court to amend its complaint to add both HBK and Network Services Integration Group as defendants. As the grounds for this motion, Net Solutions stated that the discovery process had revealed that HBK had been involved in the decision to improperly transfer Net Solutions's Mahoning County business to NSI Group. Although the original three defendants filed a brief in opposition to the amendment, the trial court granted Net Solutions's motion.
 {¶ 18} In its amended complaint, Net Solutions raised four causes of action against the two new defendants, including claims sounding in tortious interference with a business relationship, civil conspiracy in the "taking" of an existing business, misappropriation of trade secrets, and misappropriate of a trade name. Each of these claims was based on the basic allegation that HBK and its principal owners had assisted Meloy and Ross in taking Net Solutions's clients and business without John Spada's consent.
 {¶ 19} After another year of discovery, HBK moved for summary judgment as to all four claims in behalf of itself and Network Services 
Integration Group, LLC. In relation to the "tortious interference" and "conspiracy" claims, HBK essentially argued that its acts in assisting Meloy and Ross could not form the grounds for a tort because it was merely engaging in fair competition with Net Solutions for clients in the computer business. In support of its argument, HBK attached to its motion the affidavit of Michael Meloy, who averred that, before he ever contacted HBK for assistance, John Spada was fully aware of, and even approved of, his actions in forming a new computer company.
 {¶ 20} Net Solutions filed two separate responses to HBK's summary judgment motion. In both submissions, the company primarily stated that HBK was not entitled to prevail on the motion because the evidentiary materials showed that, when HBK first became involved in the matter, Meloy and Ross were still employees who owed a duty of loyalty to Spada. Based upon this, Net Solutions argued that HBK was not helping Meloy and Ross engage in fair competition for customers, but was actually helping them to "steal" Spada's customers.
 {¶ 21} In support of its responses, Net Solutions relied upon Spada's affidavit, in which he averred that he was not aware of any plans for a new company until approximately June 12, 2000. Net Solutions also pointed to certain deposition testimony and various exhibits which had been referenced during the depositions.
 {¶ 22} Net Solutions's second response to the summary judgment motion was submitted on April 18, 2003. At that juncture, the entire case was scheduled for a jury trial in June 2003. However, approximately one week before the trial date, counsel for the Spadas and Net Solutions moved to withdraw from the action on the basis that counsel and the clients could not agree as to the proper strategy to follow at trial. The trial court granted this motion, and the trial was postponed indefinitely.
 {¶ 23} Before the trial court could issue any decision on the summary judgment motion, HBK filed a separate motion for partial judgment on the pleadings under Civ.R. 12(C). In this new motion, HBK noted that Net Solutions's "tortious interference" claim had been based in part upon the assertion that NSI Group had hired the three former employees from the Mahoning County office, despite the fact that each of those employees had a "no-compete" clause in their contracts. In light of this, HBK contended that, because the resolution of this particular point would involve the interpretation of those contracts, the three employees were necessary parties which Net Solutions had failed to join pursuant to Civ.R. 19. Accordingly, HBK requested that this aspect of Net Solutions's complaint be dismissed.
 {¶ 24} In its response to the new motion, Net Solutions maintained that the employees were not indispensable parties because a "tortious interference" claim could be properly resolved even if all parties to the underlying contract were not included as parties to the civil action. In the alternative, Net Solutions indicated that they were prepared to add the three employees as defendants if the trial court held that they were indispensable.
 {¶ 25} Approximately five months after granting the postponement of the trial, the trial court rendered a written judgment in which it primarily disposed of a number of pretrial evidential motions filed by the parties. However, as part of this judgment, the trial court also granted HBK's summary judgment motion as to each pending claim against HBK and Network Services Integration Group. Regarding the merits of this motion, the trial court only stated that HBK "did not engage in any actionable conduct against Plaintiff." In addition, the court granted HBK's motion for judgment on the pleading to the extent that its ruling on the summary judgment motion had not disposed of all relevant matters. Finally, this judgment contained a finding that there was no just reason for delay under Civ.R. 54(B).
 {¶ 26} In now appealing from the foregoing judgment, Net Solutions has assigned the following as error:
 {¶ 27} "[1] As a matter of law, appellees Hill, Barth King and Network Services Integration Group were not entitled to judgment on the pleadings, * * *.
 {¶ 28} "[2] As a matter of law, appellees Hill, Barth King and Network Services Integration Group were not entitled to summary judgment."
 {¶ 29} Even though the trial court's decision in favor of HBK was primarily based upon its ruling on the summary judgment motion, Net Solutions's first assignment challenges the merits of the court's determination on the motion for judgment on the pleadings. Net Solutions submits that, even if the former employees were indispensable, the dismissal of its "tortious interference" claim was still not warranted because the proper remedy in this instance would have been to require that the employees be added as parties to the action.
 {¶ 30} Civ.R. 19(A)(1) provides that a person must be made a party to a civil action if she can be subject to service of process and her absence from the action will mean that the other parties in that action cannot be accorded complete relief. Civ.R. 19(B) then states that, if a person who satisfies (A)(1) cannot be added as a party, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Furthermore, Civ.R. 12(B)(7) provides that an action can be dismissed on the basis of failing to join a necessary party. See Botson v. Pence (May 23, 2001), 9th Dist. No. 3132-M, 2001 Ohio App. LEXIS 2287.
 {¶ 31} Despite the specific language in both rules allowing for dismissals, the Supreme Court of Ohio has still indicated that the failure to join a necessary party should only be the basis for dismissing in rare circumstances. In Plumbers Steamfitters Local Union 83 v.Union Local School Dist. Bd. of Education (1999), 86 Ohio St.3d 318, 321, the court stated:
 {¶ 32} "Under the Civil Rules, the absence of a necessary party alone would not justify the dismissal of an action. `Ohio courts have eschewed the harsh result of dismissing an action because an indispensable party was not joined, electing instead to order that the party be joined pursuant to Civ.R. 19(A) (joinder if feasible) or that leave to amend the complaint be granted. Moreover, Civ.R. 21 * * * allows parties to be added or dropped at any stage of the proceeding, as justice requires.' (Citations omitted.) State ex rel. Bush v. Spurlock (1989),42 Ohio St.3d 77, 81, * * *."
 {¶ 33} It has also been held that, in reviewing a decision on a motion to dismiss for failure to join, an appellate court is not required to show deference to the trial court's ruling; instead, the matter must be considered de novo. Englehart v. C.T. Taylor Co., Inc. (Dec. 8, 1999), 9th Dist. No. 19325, 1999 Ohio App. LEXIS 5829, 3.
 {¶ 34} In the instant case, Net Solutions expressly stated that it was willing to add the three employees as parties if the trial court determined that they were indispensable. In addition, at the time the trial court made its decision on the motion for partial judgment on the pleadings, the trial on the final merits of the entire action had been postponed. In light of these circumstances, there was simply no reason for the trial court to dismiss any aspect of the case on the grounds that an indispensable party had not been added, regardless of the trial court's decision on the summary judgment motion.
 {¶ 35} Because the trial court erred in granting HBK's motion for partial judgment on the pleadings, the first assignment in this appeal has merit.
 {¶ 36} Net Solutions's next assignment constitutes the crux of the instant appeal. Under this assignment, Net Solutions contends that the granting of summary judgment was not legally appropriate in this instance because, in responding to HBK's motion, it was able to submit sufficient evidentiary materials to raise a factual question as to the propriety of HBK's actions in assisting Meloy and Ross. Specifically, Net Solutions asserts that its materials tended to show that HBK's actions did not constitute fair competition because some of those actions were taken before Meloy's and Ross's employment was officially terminated.
 {¶ 37} As a general proposition, summary judgment can only be granted in a civil action when: (1) there are no genuine issues of material fact remaining to be tried; (2) the party moving for summary judgment is entitled to prevail as a matter of law; and (3) the nature of the evidentiary materials are such that, even if those materials are construed in favor of the opposing party, a reasonable person could only reach a conclusion adverse to that party. Civ.R. 56(C); Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. In applying this standard on appeal, an appellate court is required to engage in a de novo analysis. Bonacorsi v. Wheeling Lake Erie Ry. Co., 95 Ohio St.3d 314,2003-Ohio-2220, ¶ 24.
 {¶ 38} As to the first prong of the foregoing standard, it has been stated that whether a particular fact is "material" to an action depends upon the substantive law governing the claim. Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603. When it is necessary to determine if there is a "genuine" issue regarding such a fact, a court can only consider the pleadings, depositions, answers to interrogatories, written admissions, any written stipulations of fact, affidavits, and transcripts of evidence. See Civ.R. 56(C). All of the materials must be viewed in a light most favorable to the nonmoving party when the summary judgment decision is made. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 328.
 {¶ 39} In relation to the burdens each party has in a summary judgment exercise, this court has consistently quoted the analysis in Dresher v.Burt (1996), 75 Ohio St.3d 280, 293:
 {¶ 40} "`[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.' * * *.
 {¶ 41} "* * *
 {¶ 42} "`If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party.' * * *." Grove v. Fresh Mark, Inc.,156 Ohio App.3d 620, 2004-Ohio-1728 at ¶ 12-14.
 {¶ 43} In the instant case, HBK sought summary judgment regarding all four claims Net Solutions had asserted against it and Network Services and Integration Group. As was noted above, Net Solutions's first claim alleged that HBK had tortiously interfered with its business relationships. In order to satisfy the elements of this type of claim, a plaintiff must prove that a business relationship existed, that the defendant was aware of that relationship, that the defendant intentionally interfered with the relationship and caused a breach of it, and that the plaintiff incurred damages as a result. Wolf v.McCullough-Hyde Memorial Hosp., Inc. (1990), 67 Ohio App.3d 349, 354. Furthermore, to prevail on such a claim, the plaintiff must establish that the defendant acted with actual malice to the extent that the interference was unjustified or improper. Chandler Assoc., Inc. v.America's HealthCare Alliance, Inc. (1997), 125 Ohio App.3d 572, 583.
 {¶ 44} In arguing in its summary judgment motion that its actions in helping Meloy and Ross were justified, HBK contended that it was merely assisting a new company in the computer market compete against another for clients and employees. This contention was predicated on the factual assertion that, at the time of the first discussion between Meloy and Carlon, Meloy had already told John Spada that he intended to organize a separate company. In support of this assertion, HBK relied upon Meloy's affidavit, in which he also averred that Spada had consented to Meloy's actions in light of the lack of any agreement on the equity issue.
 {¶ 45} However, in responding to HBK's motion, Net Solutions presented the affidavit of John Spada. Our review of that affidavit indicates that Spada expressly stated that he did not become aware of Meloy's plans until June 12, 2000, more than ten days after the first meeting between Meloy and Carlon. This statement is not merely sufficient to directly contradict Meloy's averment that he had previously informed Spada of his plans for a new company, but also creates an inference that Spada had not consented to Meloy's plan.
 {¶ 46} As to this point, this court would further note that a copy of Carlon's June 2, 2000 memorandum confirms that he referred to possible legal problems stemming from the "taking" of Net Solutions's business. His use of the term "taking" could raise a possible inference that he was aware that Spada had not agreed that Meloy could take certain clients with him to the new company. Based upon this, a reasonable person might be able to conclude that Carlon realized that HBK would be assisting Meloy and Ross in defrauding Spada of Net Solutions's client base in Mahoning County.
 {¶ 47} In light of the foregoing, this court concludes the evidentiary materials before the trial court were sufficient to raise a genuine issue as to whether they acted with proper justification in assisting Meloy and Ross in the formation of NSI Group. Plus, our review of the materials indicates that Net Solutions presented some evidence showing that its business profits were damaged as a result of the fact that it lost certain clients to Meloy and Ross. Accordingly, we hold that summary judgment should not have been granted in regard to the claim of tortious interference with a business relationship.
 {¶ 48} The foregoing basic analysis would also apply to Net Solutions's claim for "civil conspiracy." In order to establish the elements of this claim, the plaintiff must be able to prove: (1) that two or more persons have engaged in a "malicious" combination with the intent to injure a third individual or his property; and (2) the persons have engaged in an unlawful act independent from the conspiracy. See Minarikv. Nagy (1963), 8 Ohio App.2d 194, 195-196. In this instance, the act of assisting Meloy and Ross in the "taking" of the clients and employees would constitute the independent unlawful act. Furthermore, Net Solutions's evidence as to the discussions between Carlon and Meloy would be sufficient to raise a factual dispute as to the existence of the conspiracy.
 {¶ 49} Finally, as to the "trade name" claim, Net Solutions submitted materials which tended to show that Carlon and Meloy had discussions concerning whether the name of the new company should be similar to the abbreviation of "Net Solutions." Similarly, as to the "trade secrets" claim, the evidentiary materials indicated that, when the three former employees started to work for Meloy and Ross, they used certain "purchases" information which they had obtained while still working for Net Solutions. Since each of the foregoing acts occurred while HBK was assisting Meloy and Ross, a reasonable person could infer that HBK had played a role in the possible misappropriation of these items. To this extent, summary judgment was not warranted on Net Solutions's third and fourth claims for relief.
 {¶ 50} Taken as a whole, Net Solutions's evidentiary materials contradicted those filed by HBK, and thus were sufficient to raise genuine issue as to certain factual questions. In addition, many of these questions were material to the four claims which Net Solutions had raised in regard to HBK and Network Services Integration Group. Therefore, since the trial court erred in granting summary judgment in relation to these specific claims, Net Solutions's second assignment of error also has merit.
 {¶ 51} For the foregoing reasons, the judgment of the Mahoning County Court of Common Pleas is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.
O'Neill, J., Eleventh Appellate District, sitting by assignment, Grendell, J., Eleventh Appellate District, sitting by assignment, concur.
[1] For the sake of clarity and brevity, all of the parties to this appeal shall be referenced by their proper names in the factual statement of this opinion. For the same reasons, the company names of the various corporate entities involved in this matter shall be abbreviated.