OPINION
{¶ 1} Appellant Patrick J. Naples, timely appeals the decision of the Mahoning County Court of Common Pleas to grant summary judgment to Mayor Joseph Rossi and the Village of Lowellville, collectively referred to as Appellees. Appellant alleges that summary judgment was inappropriate because there are material facts in dispute as to whether he complied with R.C. §4113.52, the Whistleblower statute. The record clearly reveals that Appellant failed to comply with many of the requirements of the Whistleblower statute. Therefore, it was proper for the trial court to grant summary judgment to Appellees, and that judgment is hereby affirmed.
 PROCEDURAL AND FACTUAL BACKGROUND {¶ 2} The events leading up to this appeal started in early 2001. Former United States Congressman James Traficant was defending himself against federal criminal charges at that time. During this criminal prosecution, Traficant alleged that a federal prosecutor had committed a number of crimes during the course of the case. To support his allegations, Traficant filed a motion which referred to an affidavit signed by Appellant. Appellant's affidavit contained allegations of misconduct by the prosecutor and by the former chief of police of Youngstown. The Youngstown Vindicator reported these events on August 30, 2001.
 {¶ 3} While these events were transpiring, Appellant was employed as a police officer with the Village of Lowellville Police Department in Mahoning County, Ohio.
 {¶ 4} On August 30th or 31st, 2001, Appellant was allegedly notified by Lowellville Chief of Police Vance that he would not be scheduled for police duties for the indefinite future. All parties agree that Appellant was not permitted to return to work as a police officer after August 30, 2001.
 {¶ 5} Soon after these events occurred, Appellant was investigated for allegedly using excessive force during an arrest. Appellant was later cleared of this charge.
 {¶ 6} On October 10, 2001, Appellant presented a three-page letter to the Lowellville Village Council. (6/14/04 Opposition to Defendant's Motion for Summary Judgment, Exh. B.) In this letter, Appellant set forth his perspective on the events leading up to his removal from the police schedule. Appellant also described certain criminal acts he believed were committed by Mayor Rossi. In this letter, Appellant appears to have sua sponte declared himself to be a federal witness, and then accused Mayor Rossi of committing the crime of intimidating a witness, a violation of R.C. § 2921.04. Appellant also accused Mayor Rossi of the misdemeanor crime of interfering with civil rights, described in R.C. § 2921.45, for allegedly trying to suppress Appellant's free speech right. The letter goes on to accuse Mayor Rossi of initiating an unwarranted investigation into the alleged use of excessive force, and of committing the misdemeanor crime of falsely accusing a peace officer of misconduct, in violation of R.C. § 2921.15.
 {¶ 7} The letter further accuses Mayor Rossi of interfering with police investigations, and of trying to prevent charges from being filed in some cases. Appellant also asserts, without any further details, that Mayor Rossi engaged in obstruction of official business, a misdemeanor pursuant to R.C. § 2921.31, and dereliction of duty, a misdemeanor pursuant to R.C. § 2921.44.
 {¶ 8} On June 12, 2002, Appellant received a letter from Mayor Rossi designated as formal notice that Appellant was being terminated as a reserve part-time officer with the Lowellville Police Department.
 {¶ 9} Appellant filed his pro se complaint on December 2, 2002. The complaint contained six counts and asked for unspecified general and punitive damages. It is not entirely clear what type of claim each of the six counts is asserting. The complaint does refer to R.C. § 4113.52, alleging a violation of the Whistleblower statute, and also mentions that Appellant was wrongfully discharged under R.C. §§ 737.171 and 737.19. The complaint further alleges that Appellant had been employed as a police officer with the Lowellville Police Department, and had been fired or removed from that position after publicly accusing Mayor Rossi of criminal conduct.
 {¶ 10} Appellant concurrently filed a motion for a temporary restraining order, which was subsequently overruled by the trial court because the motion did not conform to the requirements of Civ.R. 65.
 {¶ 11} Appellees filed their answer on December 18, 2002. They also filed a counterclaim on February 12, 2003, alleging that Appellant was a vexatious litigator under R.C. § 2323.52. The counterclaim refers to four different complaints filed by Appellant, starting in 1998, directed against the Village of Lowellville; the mayor and police chief of Lowellville; the City of Struthers; the mayor, prosecutor, assistant prosecutor, and clerk of courts of Struthers; and the Mahoning County Sheriff. Appellant answered the counterclaim and admitted that he had filed all the aforementioned civil complaints, but denied that he was a vexatious litigator.
 {¶ 12} Appellant subsequently filed a mandamus action in this Court, which attempted to force the Lowellville chief of police to file criminal charges against certain public officials in the Village of Lowellville. State ex rel. Naples v. Vance, 7th Dist. No. 02-CA-181. Appellant was unsuccessful in the mandamus action.
 {¶ 13} On July 18, 2003, Attorney John F. Myers entered a notice of appearance as counsel for Appellant.
 {¶ 14} On May 26, 2004, Appellees filed a motion for summary judgment. Appellees characterized Appellant's complaint as consisting of two claims: 1) wrongful discharge; and 2) a violation of the Whistleblower statute. For evidentiary support, Appellees relied primarily upon deposition testimony that was subsequently filed with the trial court on June 14, 2004, consisting of the depositions of Appellant, Mayor Rossi, and Chief of Police Vance. Appellees argued that Appellant's wrongful discharge claim was barred by res judicata because the same issue had been litigated in a federal court case. Appellees also argued that Appellant failed to state a viable wrongful discharge claim because he was an auxiliary part-time police officer, and as such, was an at-will employee who could be removed without cause at any time by the mayor of Lowellville pursuant to R.C. §737.161. Appellees further argued that Appellant did not satisfy the requirements of the Whistleblower statute because he failed to file a written report to his employer of any alleged criminal violation, pursuant to R.C. § 4113.52. Appellees outlined additional arguments explaining why each specific count in the complaint must fail as a matter of law.
 {¶ 15} Appellant filed his response to the motion for summary judgment on June 14, 2004. Appellant stated that he was an officer of the Lowellville Police Department, working 20 to 40 hours per week. Appellant alleged that he was effectively terminated from employment on August 30, 2001, and was expressly notified of this termination by a letter dated June 12, 2002. Appellant attached his own affidavit to his memorandum, indicating that he was suspended from duty on August 31, 2001, and completely terminated from his position on June 12, 2002. He stated that Lowellville Police Chief Vance told him on August 31, 2001, that he was being removed from the work schedule due to a report about Appellant in the Youngstown Vindicator newspaper. (Naples Affidavit, p. 1, attached to 6/14/04 Opposition to Defendant's Motion for Summary Judgment.) Appellant stated that, on October 10, 2001, he presented a letter to the Lowellville Village Council and to the Village Solicitor that outlined the criminal activities of Mayor Rossi. Appellant averred that he attempted to return to work after October 10, 2001, but that Police Chief Vance and Mayor Rossi would not permit it. Appellant also stated that Mayor Rossi was quoted in a news article in the Youngstown Vindicator as saying that Appellant would, "pay the consequences for accusing me of being corrupt." (Exh. E, attached to Naples Affidavit, 6/14/04 Opposition to Defendant's Motion for Summary Judgment.) Appellant concluded that the evidence presented, including various depositions already filed with the court, along with numerous attachments to his memorandum in opposition to summary judgment, precluded the court from granting summary judgment to Appellees.
 {¶ 16} On June 16, 2004, the trial court filed a judgment entry granting summary judgment to Appellees. The judgment entry also stated that there was, "no just cause for delay." This language indicates that the trial court intended this judgment entry to be a final appealable order pursuant to Civ.R. 54(B), even though Appellees' vexatious litigator counterclaim remains pending in the trial court. This timely appeal followed.
 SUMMARY JUDGMENT STANDARD OF REVIEW {¶ 17} An appellate court conducts a de novo review of a trial court's decision on a motion for summary judgment. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. In accordance with Civ.R. 56, summary judgment is appropriate:
 {¶ 18} "[W]hen (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
 {¶ 19} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) Dresher, supra, 75 Ohio St.3d 280, 293,662 N.E.2d 264.
 {¶ 20} Summary judgment is appropriate when the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. State ex rel. Morley v.Lordi (1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937.
 {¶ 21} The permissible types of evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. All of the evidentiary materials must be viewed in a light most favorable to the nonmoving party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 4 O.O.3d 466,364 N.E.2d 267.
 {¶ 22} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293,662 N.E.2d 264.
 {¶ 23} Summary judgment is appropriate when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Whether or not a fact is a "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing Anderson v.Liberty Lobby, Inc. (1986), 477 U.S. 242, 2472-48,106 S.Ct. 2505, 91 L.Ed.2d 202.
 ASSIGNMENTS OF ERROR {¶ 24} Appellant presents three assignments of error, all dealing with specific requirements of R.C. § 4113.52, known as the Whistleblower statute:
 {¶ 25} "I. The trial court erred because there are material issues of fact as to the reasonableness of appellant's complaint under R.C. 4113.52(A)(3).
 {¶ 26} "II. The trial court erred because there are some material issues of fact as to whether Appellant followed the oral and written provisions of R.C. 4113.52(A)(3).
 {¶ 27} "III. The trial court erred because Appellant demonstrated he was subjected to a retaliatory discharge as defined in R.C. 4113.52(B) as a result of his whistleblower activities under R.C. 4113.52(A)(3)."
 {¶ 28} Although there are six counts in Appellant's complaint, the only counts relevant to this appeal are those dealing with the Whistleblower statute. In this appeal, Appellant contends that he satisfied the evidentiary requirements of R.C. §4113.52(A)(3) to the extent necessary to survive summary judgment. Appellant cites Section (A)(3) of the statute which deals with situations in which an employee reports criminal violations of a fellow employee:
 {¶ 29} "(3) If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."
 {¶ 30} It is not at all clear why Appellant is now relying on the portion of the statute dealing with reported wrongdoing of fellow employees, when the entire record prior to this appeal refers to alleged criminal violations of his employer, which would be covered under R.C. §§ 4113.52(A)(1)(a) and 4113.52(C):
 {¶ 31} "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
 {¶ 32} "* * *
 {¶ 33} "(C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section. If the employee who makes a report under either division fails to make such an effort, the employee may be subject to disciplinary action by the employee's employer, including suspension or removal, for reporting information without a reasonable basis to do so under division (A)(1) or (2) of this section."
 {¶ 34} "Employer" is defined in R.C. § 4113.51(B) as follows:
 {¶ 35} "(B) `Employer' means any person who has one or more employees. `Employer' includes an agent of an employer, the state or any agency or instrumentality of the state, and any municipal corporation, county, township, school district, or other political subdivision or any agency or instrumentality thereof."
 {¶ 36} Appellant was a police officer for the Village of Lowellville, and thus, the village was ultimately the employer in this case. The definition of "employer" in R.C. § 4113.51(B) also includes agents of the employer. According to R.C. §§ 737.16 and737.161, the village mayor is responsible for hiring all village police officers. According to R.C. §§ 737.16, 737.161, 737.162
and 737.19, the mayor is also responsible for firing all police officers. Thus, Mayor Rossi would also be considered an employer under these definitions, as he is an agent of the village, as well as being the person who has the direct responsibility of hiring and firing police officers. Mayor Rossi is clearly not Appellant's fellow employee. Because Appellant has only alleged and attempted to prove that he reported wrongdoing by his employers, Mayor Rossi and the Village of Lowellville, and has not alleged or shown any wrongdoing by any person who could be considered as a fellow employee, he has failed to allege or provide any evidence to support a viable claim for relief under R.C. § 4113.52(A)(3). Appellant was therefore limited to filing his claim under R.C. § 4113.52(A)(1)(a), which he apparently did not do or is no longer asserting on appeal.
 {¶ 37} This apparent error in Appellant's argument is a sufficient reason to overrule all three assignments of error, since it is obvious from the entire record that Appellant has not accused any fellow employee of wrongdoing, but rather, has been concerned with the alleged criminal activities of his employer.
 {¶ 38} For the sake of argument, though, we will assume that Appellant did attempt to present a claim under R.C. §4113.52(A)(1)(a), i.e., that his employer retaliated against him for reporting criminal violations that his employer had the power to correct. We will proceed to address the issues raised in this appeal based on this assumption. Appellant's assignments of error focus on a number of aspects of the Whistleblower statute that Appellant believes he satisfied. In order to survive summary judgment, though, Appellant must establish that he satisfied not just some but all of the essential elements of the statute that have been brought into question by Appellees, because Appellant would have to prove all these elements at trial. Thus, instead of trying to find all the possible elements that Appellant may have satisfied, our analysis will focus on the elements that Appellees contend were not satisfied. If Appellees are correct that one or more of these essential elements has not been established, then the trial court was correct in granting summary judgment to Appellees.
 {¶ 39} Appellees argue that Appellant did not satisfy the written report requirement of the statute. R.C. § 4113.52(A)(3) states: "the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation." Appellant contends that this written report was satisfied by a three-page letter he attempted to deliver to the Lowellville Village Council on October 10, 2001.
 {¶ 40} Failure to strictly comply with the notice requirements of the Whistleblower statute will defeat a claim under R.C. § 4113.52. Grove v. Fresh Mark, Inc.,156 Ohio App.3d 620, 2004-Ohio-1728, 808 N.E.2d 416, ¶ 19, citingContreras v. Ferro Corp. (1995), 73 Ohio St.3d 244,652 N.E.2d 940.
 {¶ 41} Contrary to Appellant's argument, there are three significant difficulties with his assertion that he complied with the notice requirements of the statute. First, the record reveals that Appellant did not attempt to notify his supervisor or other proper agent of his employer, as defined by the statute. R.C. §4113.52(A)(1)(a) states: "the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation." The purpose of these notice requirements has been explained in detail by the Ohio Supreme Court in Contreras v. Ferro Corp. (1995),73 Ohio St.3d 244, 652 N.E.2d 940:
 {¶ 42} "Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation both orally and in writing. An employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities. If the employee provides the employer with oral notification and a written report, the employee may be entitled to the protections of the whistleblower statute for reporting the information to outside authorities only if the employer has failed to correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier. R.C. 4113.52(A)(1)(b) contemplates that the employer will apprise the employee of its efforts to correct the violation. That provision mandates that if an employee makes a report to his or her employer under R.C. 4113.52(A)(1)(a), the employer, within twenty-four hours after the oral notification was made or the report received or by the close of business on the next regular business day, whichever is later, must provide written notice to the employee of any efforts the employer made to correct the alleged violation or hazard or of the absence of the alleged violation or hazard. Only after all these various procedures and requirements have been satisfied, and only if the employer has not corrected the violation or made a reasonable and good faith effort to correct the violation may the employee report the violation to outside authorities — but only those authorities specified in R.C. 4113.52(A)(1)(a).
 {¶ 43} "Therefore, to restate, R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authoritiesonly if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C.4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may `blow the whistle' to outside authorities. Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52." (Emphasis in original.) Id. at 248-249.
 {¶ 44} Appellant was hired by Mayor Rossi and was under the immediate authority of Police Chief Vance, yet he attempted to deliver his letter in a public meeting of the village council. Appellant does not explain how the village council can qualify as, "the employee's supervisor or other responsible officer of the employee's employer," as stated in the statute. Appellant conceded at oral argument that he never informed Police Chief Vance or any other supervisor of his allegations prior to making them public at the village council meeting on October 10, 2001.
 {¶ 45} Secondly, even if the village council could be considered as the proper entity Appellant needed to contact, he did not give the village council or Mayor Rossi 24 hours to correct the problems mentioned in the three-page letter. Instead, Appellant made his accusations public at the same time that he informed village council of the problems. As stated inContreras, the employee must give the employer 24 hours to correct the problem before the employee may report the violation to the specific authorities mentioned in the statute. There is no protection under the Whistleblower statute when the employer is first given notice at the same time that the allegations are announced to the general public.
 {¶ 46} The third way in which Appellant failed to satisfy the notice requirements of the statute is in the specific content of the letter he delivered to the village council. The three-page letter does not appear to set forth any type of violation that would satisfy the requirements of the Whistleblower statute, namely, a violation of, "any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony." R.C. § 4113.52(A)(3).
 {¶ 47} According to the statute, the three types of relevant violations are: 1) a criminal offense that is likely to cause an imminent risk of physical harm to persons; 2) a criminal offense that is likely to cause a hazard to public health or safety; or 3) a felony.
 {¶ 48} Appellant's letter accused Mayor Rossi of committing a number of misdemeanor crimes: dereliction of duty, interfering with civil rights, making false accusations about a peace officer, obstructing official business, and intimidating a witness. Appellant listed all these specific crimes in his letter, including the corresponding sections of the Ohio Revised Code. Appellant did not explain how any of these alleged crimes presented an imminent risk of physical harm or caused a hazard to public health and safety.
 {¶ 49} Appellant may have thought, incorrectly, that some of these crimes were felonies, and as such, would satisfy the requirements of the Whistleblower statute. It is true that obstructing justice and intimidating a witness may be felonies, but only if there is a threat or risk of physical harm as part of the charge. See R.C. §§ 2921.31(B) and 2921.04(B). Appellant did not allege the felony aspects of these two crimes in his letter, nor did he allege any facts that could have converted these alleged crimes into felonies. Since Appellant cited the relevant sections of the Ohio Revised Code in his letter, and keeping in mind that Appellant is a police officer, he could not have reasonably believed that he was accusing Mayor Rossi of the types of crimes that would satisfy the requirements of the Whistleblower statute. In concluding that Appellant did not allege the type of violations that are covered by the Whistleblower statute, we are not making any judgment concerning the merit of those allegations. Obviously, the prosecuting authorities were made aware of the accusations against Mayor Rossi when Appellant publicly announced them on October 10, 2001, and such prosecuting authorities would decide if the allegations merited further action. In addition, if the village council had any authority over any of the allegations made by Appellant, the council members were certainly capable of determining the proper course of action to take in response to those allegations. Our concern in this appeal, though, is whether Appellant actually accused Mayor Rossi of the type of wrongful conduct that is protected by the Whistleblower statute. It is our conclusion that Appellant's accusations did not satisfy the requirements of the statute.
 {¶ 50} Appellees next argue that the alleged retaliatory actions cannot be a result of the October 10, 2001, letter that Appellant delivered to the Lowellville Village Council because Appellant himself asserts that he was effectively removed from his position on August 30, 2001. Appellant's own affidavit states: "I worked as a Police Officer for the Village of Lowellville * * * from about June 14, 2000 until August 30, 2001 when Mayor Rossi suspended me[.]" (Naples Affidavit, p. 1, attached to 6/14/04 Opposition to Defendant's Motion for Summary Judgment.) The date of August 30, 2001, is significant because it was on that date that the Youngstown Vindicator published the news article describing the affidavit Appellant sent to Mr. Traficant alleging misconduct by a federal prosecutor and by the former chief of police of Youngstown.
 {¶ 51} There is no indication in the record that Appellant was ever permitted to return to his duties after August 30, 2001. If Appellant was effectively removed from his duties on August 30, 2001, and if his discharge from employment is the basis of his whistleblower claim, then it is unclear how the events of October 10, 2001, can support his claim for relief. The Whistleblower statute protects an employee from retaliatory acts of the employer, not any and all acts of the employer. Appellant has not proven (and one wonders how he could prove) that his employer retaliated against him on August 30, 2001, for events that later occurred on October 10, 2001.
 {¶ 52} Furthermore, if the events surrounding the August 30, 2001, newspaper article form the basis for Appellant's claim under the Whistleblower statute, Appellant was required to provide some proof that he satisfied the elements of the statute with respect to that affidavit. Appellant has never attempted to demonstrate that the affidavit discussed in the August 30, 2001, newspaper report is protected under any section of the Whistleblower statute.
 {¶ 53} We are aware that Mayor Rossi sent a letter on June 12, 2002, giving official notice that Appellant was fired. This letter, though, does not create any dispute as to when the alleged retaliatory actions began. All parties agree the pertinent trigger date herein was August 30, 2001.
 {¶ 54} Although there is a significant body of evidence in this case discussing Appellant's relationship to the Traficant case, his disagreements with Mayor Rossi and Chief Vance, and the details of the many lawsuits he has filed, that evidence is largely irrelevant to this appeal. Since Appellant was the plaintiff in this case, he was required to produce some evidence on those elements of his case that were brought into question by Appellees. The trial court ruled against Appellant, and thus, Appellant is required to demonstrate on appeal that he presented evidence on each of the elements of his claim, and that there is a viable dispute that needs to be resolved at trial. Appellant has not done so. It appears that Appellant has relied on the wrong section of the Whistleblower statute; that he failed to file a proper written report of the violations he was alleging; that the alleged criminal violations of his employer did not satisfy the requirements of the Whistleblower statute; and that he did not notify the proper supervisor, officer or agent of his employer prior to revealing his accusations in a public forum. Neither the trial court nor this Court has been called upon in the instant case to rule upon the specific criminal allegations raised by Appellant. Our focus is on whether Appellant provided some evidence to support the essential elements of his claim that his employer violated the Whistleblower statute. Appellant failed to provide that evidence, and thus, the trial court was correct in granting summary judgment to Appellees. For all these reasons, Appellant's three assignments of error are overruled, and the judgment of the Mahoning County Court of Common Pleas is affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.