OPINION
{¶ 1} Appellants, Robert Kresse ("Kresse"), Don Nagel, David Frey, and Tom Puskarich ("Puskarich") appeal from a judgment of the Lake County Court of Common Pleas granting summary judgment in favor of appellees, North Coast Charter Boat Association ("NCCBA"), Tim Garrett ("Garrett"), and Chris Weber ("Weber").
 {¶ 2} This case arises out of a dispute over which team won the NCCBA Walleye-Steelhead Tournament ("Tournament") held on June 12, 2004, in Grand River. NCCBA is the nonprofit association that organized the event.
 {¶ 3} It is undisputed that in the Walleye portion of the Tournament, the team with the heaviest weight of catch would be declared the winner. The top team stood to win a cash prize. Approximately thirteen teams entered the Tournament. Each of the teams was captained by a member of NCCBA, including appellant Kresse. Appellee Garrett was director of the Tournament and appellee Weber was the assistant director.
 {¶ 4} Tournament rules, entitled "Rules of the Game," were posted and provided that the fish were required to be caught in Lake Erie, between 6:30 a.m. and 2:30 p.m. on June 12, 2004.
 {¶ 5} The rules further stated:
 {¶ 6} "All winners must be willing to submit to a Polygraph examination;
 {¶ 7} "Any protest must be tendered with a fee equal to that charged for a polygraph examination * * *
 {¶ 8} "Any protest will be settled by the tournament committee or by the polygraph test;
 {¶ 9} "The tournament committee reserves the right to ad [sic] new rules and/or regulations to cover any circumstances not covered in these rules and the committee decision is final as to interpretation of said rules;
 {¶ 10} "[S]elected contestants must take and pass a polygraph test to qualify for the receipt of any prize to verify compliance with tournament rules."
 {¶ 11} Following the completion of the Tournament, appellants were the apparent winners of the Walleye portion of the Tournament. Some of the contestants suspecting that appellants had caught their fish too early and/or procured them by other means than catching them from Lake Erie, complained and filed a written protest. Following the protest, one member of appellants' team, Hugh Nagel, Jr. ("Mr. Nagel"), was selected by the NCCBA board to undergo a polygraph exam. On June 15, 2004, the test was administered by an examiner from Security Polygraph Consultants, Inc., in Cleveland. The test results concluded that Mr. Nagel was "not truthful" about alleged Tournament violations.
 {¶ 12} On the next day, the NCCBA conducted an emergency meeting, and upheld the protest due to the results of the June 15, 2004 polygraph test. Appellants were disqualified.
 {¶ 13} On December 29, 2004, appellants filed a complaint naming as defendants, appellees, and John Johns ("Johns"), Richard Verbic ("Verbic"), James Garrett ("Garrett"), and John Sonnie ("Sonnie"). The complaint alleged breach of contract, unjust enrichment, defamation and civil conspiracy and requested both compensatory and punitive damages.[1]
 {¶ 14} On October 19, 2005, appellees filed a joint motion for summary judgment brief and affidavits. In response, appellants filed a motion, affidavits, and brief in opposition. On November 29, 2005, appellees filed a reply brief. Pursuant to its March 22, 2006 judgment entry, trial court granted appellees summary judgment. From this judgment, appellants filed a timely appeal setting forth the following assignment of error:
 {¶ 15} "The trial court erred to the prejudice of the Appellants by granting summary judgment in favor of Appellees."
 {¶ 16} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 17} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of thenonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ. R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ. R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ. R. 56(E).
 {¶ 18} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 19} In Ohio, courts have treated tournaments like the "Walleye-Steelhead Tournament" as voluntary associations and have declined to disturb the determinations of such associations in the absence of "fraud, arbitrariness, or collusion." Lough v. Varsity Bowl,Inc. (1963), 16 Ohio St.2d 153, 154; Hoinke Classic, Inc. v. Pape, 1st Dist. No. C-961011, 1997 Ohio App. LEXIS 4181, at 4; Stibora v. GreaterCleveland Bowling Assoc, 63 Ohio App.3d 107.
 {¶ 20} Appellants claim that there are genuine issues of material fact which preclude the grant of summary judgment in this matter. We disagree. In essence, appellants' entire appeal concerns their disagreements with the NCCBA's interpretation of its rules.
 {¶ 21} Initially, appellants argue that Tournament rules were not followed by the NCCBA. Specifically, they argue that the rules require that all fish must be tested by a torrymeter, a device which measures the chemical decomposition of fish. It is undisputed that the NCCBA did not administer torrymeter testing before declaring appellants the apparent winner of the contest. Appellants argue this omission constituted a violation of Tournament rules relating to the handling of a protest. We disagree.
 {¶ 22} NCCBA's failure to administer the torrymeter test is not relevant to their disqualification, which was based solely upon the results of the polygraph examination, as attested to in the affidavit of John Abercrombie, NCCBA president.
 {¶ 23} Appellants' argument that Kresse successfully passed a second polygraph test, which he contracted for on his own, is not well-taken.
 {¶ 24} The second polygraph test was administered to Kresse, on July 2, 2004, well after the NCCBA's June 16, 2004 decision to uphold the protest and disqualify appellants, based upon Mr. Nagel's failed polygraph test. Further, there is no provision in the rules for any follow up or subsequent polygraph testing relating to resolution of a protest. Indeed, Tournament rules expressly provide that the decision of the NCCBA is "final as to the interpretation of the rules."
 {¶ 25} Appellees submitted evidence demonstrating the absence of a genuine issue of material fact. Specifically, appellees demonstrated that the NCCBA interpreted and carried out the rules of protest in this matter. In their sworn affidavits, appellees Garret and Weber stated that they were volunteer judges and were not involved in the determination of the protest that led to the ultimate disqualification of appellants. In addition, there was no evidence of collusion among any of the appellees, nor any unlawful act committed pursuant to a scheme which damages appellants.
 {¶ 26} We next consider appellants' defamation claim as it relates to alleged conduct subsequent to the disqualification determination. In Ohio, defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. "The essential elements of a defamation action, whether slander or libel, are that: 1) the defendant made a false statement of fact; 2) that the false statement was defamatory; 3) that the false defamatory statement was published; 4) that the plaintiff was injured; and 5) that the defendant acted with the required degree of fault." Molnar v. Klammer, 11th Dist. No. 2004 L 072 CA, 2005-Ohio-6905, at ¶ 110; Celebrezze v. DaytonNewspapers, Inc. (1988), 41 Ohio App.3d 343, 346-347.
 {¶ 27} Appellants, Puskarich and Kresse, submitted affidavits in opposition to appellees' motion for summary judgment, stating: "It was further common knowledge that John Johns, Richard Verbic, and John Sonnie verbally expressed to others that [appellants] cheated and should be disqualified." These named individuals were defendants in the original complaint and were granted summary judgment earlier in this case. Thus, any claim for defamation must fail because appellants have failed to offer any evidence of statements made by appellees.
 {¶ 28} Appellants' claim of fraud is also not supported by evidence in the record. Civ R. 9(B) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Argyle Productions, Inc. v.Ticketmaster-lndiana, 11th Dist. No. 98-T-0154,1999 Ohio App. LEXIS 6098, at 3. The requirements of Civ. R. 9(B) have been construed as follows: "in order to state the circumstances constituting fraud with particularity, a complaint must state who made the misrepresentations, when those misrepresentations were made, what the misrepresentations were, and how they were directed to the plaintiffs." Id.
 {¶ 29} The allegations of appellants' complaint do not state an action for fraud. Applying the requirements set forth above, appellants have clearly failed to state a claim for fraud.
 {¶ 30} Appellants fail to set forth evidence to support a claim under a theory of civil conspiracy. In order to establish the elements of a claim for "civil conspiracy," a plaintiff must be able to prove: (1) that two or more persons have engaged in a "malicious" combination with the intent to injure a third individual or his property; and (2) the persons have engaged in an unlawful act independent from the conspiracy.Net Solutions, Inc. v. NSI Group LLC, 11th Dist. No. 04-MA-103,2005-Ohio-5483, at ¶ 48. Based on the disposition of appellants' fraud and defamation claims above, appellants have failed to meet the second factor of a civil conspiracy claim.
 {¶ 31} Based upon the foregoing, appellants' sole assignment of error is without merit. The judgment of the trial court is affirmed.
DONALD R. FORD, P.J., WILLIAM M. O'NEILL, J., concur.
[1] These other defendants were dismissed in an earlier summary judgment entry dated May 31, 2005.