[Cite as *Spitulski v. Toledo School Dist. Bd. of Edn.*, 2018-Ohio-3984.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ronald P. Spitulski

Court of Appeals No. L-17-1300

Appellant

Trial Court No. CI0201501111

v.

Board of Education of the Toledo
City School District, et al. and
Heather Baker, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: September 28, 2018

* * * * *

Dennis D. Grant, for appellant.

Roman Arce, David Rodman Cooper and Shawn Nelson,
for appellees.

* * * * *

**MAYLE, P.J.**

{¶ 1} Plaintiff-appellant, Ronald Spitulski, appeals judgments in favor of the

Toledo Public Schools Board of Education, James Gault, and Heather Baker

(collectively, "the Board"), rendered by the Lucas County Court of Common Pleas on

May 28, 2015, September 10, 2015, February 3, 2016, October 3, 2016, August 23, 2017, September 13, 2017, and November 13, 2017. For the reasons that follow, we affirm the trial court's judgments.

## I.  Background

{¶ 2} This is the second time that this action has been before this court. Our decision in *Spitulski v. Bd. of Edn. of the Toledo City School Dist.*, 2017-Ohio-2692, 90 N.E.3d 287, ¶ 8 (6th Dist.),[1] includes a detailed recitation of the factual background of this case, which, in large part, we repeat here.

{¶ 3} Sixty-seven-year-old Ronald Spitulski was employed by the Board of Education of the Toledo City School District ("the District") for nearly 25 years, most recently as a supervisor of the pupil personnel center. He was responsible for conducting suspension appeal and expulsion hearings. He reported to Heather Baker, the director of pupil placement and child adjustment services, and Baker reported to James Gault, then the chief academic officer.

### A.  Issues arise with Spitulski's work performance.

{¶ 4} Between November of 2012, and May of 2013, Baker received complaints that Spitulski had acted unprofessionally in his treatment of a non-attorney "parent advocate," several parents, and a character witness. In addition to this, on May 8, 2013,

---

[1] We first reviewed this case with respect to Gault and Baker's claims of statutory immunity.

2.

Spitulski admitted to Baker that he lost almost a year's worth of digitally-recorded hearings that he conducted during the 2012-2013 school year.

### B. The CBA outlines the disciplinary process.

{¶ 5} Spitulski was an administrative employee of the Board, and as such, was a member of the Toledo Association of Administrative Personnel ("TAAP"). TAAP and the Board are parties to a collective bargaining agreement ("CBA"). The CBA provides procedures for addressing disciplinary concerns. Those procedures call for progressive discipline where appropriate, and they set forth a three-step disciplinary process: (1) an informal level, (2) a continuing disciplinary investigation ("CDI"), and (3) a CDI report.

{¶ 6} Under step one, an administrator who wishes to informally discuss a matter that may lead to a CDI must consult with her supervisor and notify the employee and TAAP in writing on a prescribed form known as "a buff sheet." The buff sheet must describe (1) the conduct in question, (2) the date, time, and place of the meeting requested, and (3) the right of the employee to have a TAAP representative present. Under the CBA, every effort must be made to resolve matters at the informal level. If the matter is resolved, a record of the meeting and the prescribed resolution must be placed in the employee's personnel file.

{¶ 7} If the matter is not resolved at step one, or if it is a "serious matter," step two provides for a CDI, also referred to as "a hearing on the record." The supervising administrator or TAAP may submit a written request to the personnel office for a CDI within 10 days from knowledge of the serious matter, or within five working days from

3.

the date of the informal meeting. A TAAP representative shall be permitted to be present for a CDI.

{¶ 8} Finally, under step three, a CDI report is generated. A designated human resources representative may hear testimony, examine witnesses, and review all relevant material pertaining to the CDI. He or she must then issue a report to the superintendent (or his designee), who must render a decision or recommend action to the Board. A copy of the superintendent or Board's decision must be sent to all parties concerned and placed in the employee's file. The employee may submit a written response which shall be attached to the decision. The employee or TAAP may then appeal from the decision. If the decision is to terminate the employee's contract, such termination must comply with Article VII, section E of the CBA. This provision of the CBA requires compliance with the Ohio Revised Code, including R.C. 3319.16, relating to the termination of a contract by a board of education.

{¶ 9} The CBA makes clear that an employee whose conduct is the subject of investigation is entitled to (1) timely and adequate notice of the conduct complained of on a prescribed form, (2) reasonable time to prepare a response, (3) representation by the TAAP; and (4) other reasonable procedures affording due process. If an investigation is not performed in accordance with the procedures set forth in the CBA, it cannot be considered part of the employee's personnel file, and neither the fact of the investigation nor statements made during the investigation may be used in any subsequent Board proceeding. The CBA also specifies that while progressive discipline must be followed

4.

where appropriate—providing written warnings and suspensions in lieu of termination—a written warning is not always required and immediate termination may be appropriate in cases of serious misconduct.

### C. Baker initiates the disciplinary process.

{¶ 10} On May 23, 2013, Baker emailed Gault requesting a hearing on the record for Spitulski. She cited the following reasons for requesting the hearing: (1) failure to perform job duties, (2) failure to maintain professional relationships and behavior with parents and students, and (3) insubordination. On May 31, 2013, Gault contacted the District's chief human resources officer to request a hearing. He cited the following reasons for his request: (1) violation of licensure code of professional conduct for Ohio educators, (2) violation of board policy section G: Personnel; Title; Staff-Student Relations, (3) failure to perform job duties, and (4) insubordination. He further elaborated as to the conduct giving rise to his request as follows:

> Used inappropriate language during a suspension hearing for a student.

> Acted in a very unprofessional way towards parents in hearings and while scheduling hearings. Several parents have refused to allow him to hear their cases because they felt he was rude, unprofessional, and unfair. These cases had to be heard by an alternate hearing officer.

> He has failed to maintain accurate hearing records or hearing dispositions. Parent and school personnel have verified that one particular

5.

disposition was incorrect and was not what was presented in the hearing. When questioned about it, he refused to adjust it, stating it was correct.

Upon request, Ron was unable to supply any audio hearing tapes from any hearings held in his office this school year up until the month of April. He states he is unsure of what happened to them. This is in violation of Ohio Revised Code 9.69 [sic].[2]

{¶ 11} A hearing on the record took place on August 19, 2013. Gault presented the case to the District's hearing officer, Annmarie Heldt, and Baker and Spitulski testified. A union representative appeared on Spitulski's behalf. On September 9, 2013, Heldt issued a written recommendation to the Board, recommending that Spitulski be terminated. The District's chief human resource officer, Cheryl Spieldenner, recommended that Heldt's recommendation be upheld.

### D. The Board terminates Spitulski's employment.

{¶ 12} On October 4, 2013, the District's treasurer provided written notice under R.C. 3319.16 of its intent to terminate Spitulski's employment. Spitulski submitted a written request for arbitration to be conducted by an independent referee, and the Board invoked the hearing procedures provided in R.C. 3319.16. The Ohio Department of Education appointed a neutral referee, attorney James Gucker. On May 5 and 6, 2014, Gucker considered evidence and heard testimony from a number of witnesses. On

---

[2] The Ohio Revised Code does not contain a section 9.69.

6.

August 14, 2014, he issued a recommendation to the Board concluding that "good and just cause" did *not* exist to terminate Spitulski's employment agreement. Notwithstanding the referee's recommendation, the Board passed a resolution on December 16, 2014, terminating Spitulski's employment contract. The contract otherwise would have expired on July 31, 2016.

### E. Spitulski seeks recourse.

{¶ 13} Spitulski dually filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") in September of 2013, alleging gender, disability, and age discrimination. He later sought permission to withdraw the charge so he could pursue the matter in the common pleas court. The OCRC granted his request on July 17, 2014. At Spitulski's request, the EEOC issued a notice of right to sue dated October 14, 2014. On January 13, 2015, following the Board's termination of his employment contract, Spitulski filed a complaint against the Board, Gault, and Baker alleging eight claims: (1) termination without good and just cause in violation of R.C. 3319.16; (2) tortious violation of rights; (3) age discrimination; (4) disability discrimination; (5) retaliation in violation of R.C. 4112.02(I); (6) intentional infliction of emotional distress ("IIED"); (7) false light invasion of privacy; and (8) intentional interference with business relationship.

{¶ 14} Through seven different orders, the trial court disposed of all of Spitulski's claims:

7.

- May 29, 2015:  dismissed counts two and eight;

- September 10, 2015:  dismissed count one;

- February 3, 2016:  dismissed Spitulski's claim for punitive damages and attorney's fees;

- October 3, 2016:  dismissed counts four and seven;

- August 23, 2017:  dismissed count six;

- September 13, 2017:  dismissed count three; and

- November 13, 2017:  dismissed count five.

{¶ 15} Spitulski appealed and assigns the following errors for our review:

A.  The Trial Court Committed Prejudicial Error by Creating a Fact to Justify Dismissal of Plaintiff's Age Discrimination Claim.

B.  The Trial Court Committed Prejudicial Error by Dismissing Plaintiff's Count Two, Improperly Inferring that He Had Received a Fair Administrative Hearing.

C.  The Trial Court Committed Prejudicial Error in Dismissing Plaintiff's Disability Discrimination Claim by Holding that Pretext Could Not be Proven by Comparing Plaintiff's Discharge with the Lesser Discipline Received by Non-class Members Who had Committed Unprofessional Conduct.

D.  The Trial Court Committed Prejudicial Error by Applying Inapplicable Private Sector Contract Preemption Law to Dismiss Plaintiff's Public Sector Intentional Infliction of Emotional Distress Claim.

E.  The Trial Court Committed Prejudicial Error by Dismissing Plaintiff's Retaliation Claim Based on Dicta in a Case that Supposedly Rejected the "Cat's Paw" Theory of Liability.

F.  The Trial Court Committed Prejudicial Error by Assessing the Board's Resolution, rather than the Referee's Findings of Fact, and then Applying an Incorrect Evidentiary Standard in that Assessment.

G.  The Trial Court Committed Prejudicial Error by Dismissing Plaintiff's Claims for Punitive Damages and Attorney Fees Under Abrogated Judicially-created Governmental Immunity Law.

## II.  Law and Analysis

{¶ 16} In his seven assignments of error, Spitulski challenges the trial court's dismissal of Counts 1 through 6 of his complaint, as well as the court's dismissal of his demand for punitive damages and attorney fees.  We address each of his assignments of error in turn.

### A.  Dismissal of Spitulski's Age Discrimination Claim.

{¶ 17} In Count 3 of Spitulski's complaint, he claimed that he was unlawfully discharged from his employment on the basis of his age.  He alleged that Baker told him that "they're asking me when you are going to retire," and told him that the District

wanted him discharged because "you have too much gray hair." He also contended that on September 13, 2013, Spieldenner called him and the TAAP president into her office, at which point she attempted to coerce him into signing "an unlawful retirement agreement."

{¶ 18} The Board moved the court under Civ.R. 12(B)(1) to dismiss Spitulski's claim for age discrimination for lack of subject-matter jurisdiction. In an order dated September 13, 2017, the trial court granted the Board's motion. In his first assignment of error (Error "A"), Spitulski claims that the trial court erred in granting the Board's motion because (1) it "creat[ed] a fact to justify dismissal" of his claim, and (2) the Board failed to assert lack of subject-matter jurisdiction as an affirmative defense, thereby waiving the defense.

{¶ 19} "Civ.R. 12(B)(1) provides for the dismissal of a complaint where the trial court lacks jurisdiction over the subject matter of the litigation." *United States Bank Natl. Assn. v. Perdeau*, 6th Dist. Lucas No. L-13-1226, 2014-Ohio-5818, ¶ 9. "The standard of review for dismissal under Civ.R. 12(B)(1) is 'whether any cause of action cognizable by the forum has been raised in the complaint.'" *Id.,* quoting *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). We review a Civ.R. 12(B)(1) decision de novo, employing the same standard as the trial court. *Id.*

{¶ 20} The trial court held that it lacked jurisdiction to hear Spitulski's age discrimination claim because under R.C. 4112.08, he was required to elect between pursuing a charge with the OCRC *or* instituting litigation. It held that because Spitulski

elected to pursue a charge with OCRC—and notwithstanding the fact that he later withdrew that charge—the court lacked jurisdiction over his age-discrimination claim based on the same alleged conduct.

{¶ 21} In Ohio, a plaintiff who claims to have been subjected to age-based employment discrimination may pursue either (1) a judicial remedy, by filing a civil action in the common pleas court under R.C. 4112.14 or 4112.02(L), or (2) an administrative remedy, by filing a charge with the OCRC under R.C. 4112.05(B)(1). *Vinson v. Diamond Triumph Auto Glass, Inc.*, 149 Ohio App.3d 605, 2002-Ohio-5596, 778 N.E.2d 149, ¶ 8 (2d Dist.). Arguably, R.C. 4112.99 provides an additional basis for seeking a judicial remedy for age-based discrimination, however, the Ohio Supreme Court held in *Bellian v. Bicron Corp.*, 69 Ohio St.3d 517, 519, 634 N.E.2d 608 (1994), that regardless of a litigant's stated reliance on R.C. 4112.99 as the basis for his age-discrimination claim, "he had to be referring to the form of age-based employment discrimination identified by R.C. 4112.02."

{¶ 22} The Ohio Supreme Court recognized in *Smith v. Friendship Village of Dublin*, 92 Ohio St.3d 503, 506, 751 N.E.2d 1010 (2001), that the General Assembly specifically provided in R.C. 4112.08 that individuals alleging age discrimination must choose between remedies. *Id.*, citing R.C. 4112.08 ("[A]ny person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (L) of section 4112.02 of the Revised Code."); *see also*

11.

*Balent v. Natl. Revenue Corp.*, 93 Ohio App.3d 419, 423, 638 N.E.2d 1064 (10th Dist.1994) (applying election of remedies to actions brought under R.C. 4112.99).

{¶ 23} The mere act of filing an OCRC charge evinces an intent to elect the administrative remedy set forth in R.C. 4112.05(B)(1). *Vinson* at ¶ 20. This is true even where the administrative process is later abandoned or withdrawn. *Id.* Where a litigant files an age-discrimination claim premised on the same unlawful discriminatory practices that formed the basis for an earlier-filed OCRC charge, a trial court properly dismisses the claim under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction. *Id.* at ¶ 7.

{¶ 24} The question here is whether Spitulski's lawsuit and OCRC charge are premised on the same unlawful discriminatory practices. Spitulski argues that they could not have been because "the unlawful discriminatory practice" here was his termination, and he was not terminated until December 16, 2014—which was 14 months after he first initiated his September 20, 2013 OCRC charge. He claims that the conduct he challenged in his charge was the Board's attempt to coerce him into signing an agreement to retire, whereas his lawsuit challenges the threats and retaliation to which he was allegedly subjected, as well as his suspension and termination.

{¶ 25} The Board argues, however, that Spitulski himself identified in his charge that the "type of discrimination" he was alleging was his "discharge/termination." It insists that the alleged "unlawful discriminatory practices" complained of in his OCRC charge are the same as those alleged in his complaint. It points to paragraph three of his charge, and insists that the same facts are alleged in his complaint:

12.

3. I believe I was disciplined/terminated based on my sex/male, age 66 years, and disability because:

a. I am a male person who was born on January 10, 1947;

b. I am a person who has a disability (and respondent has record of my disability);

c. I was issued a disciplinary hearing notice on August 12, 2013, and the hearing was held on August 19, 2013. I was accused of violations of the state code of professional conduct for educators, violation of policies regarding student-staff relations, failure to perform job duties, and insubordination. Respondent recommended I be terminated, despite the loss of tapes for hearings I conducted from September 2012 to April 2013 due to a technical issue/computer glitch.

d. Heather Baker (female, age 32) stated that she was told to tell him "they're asking me when you're going to retire" and "that you have too much gray hair." She has also treated younger staff more favorably in assignments and compensation.

{¶ 26} Spitulski claims that the Board cited selectively to the OCRC charge, omitting paragraph 4, which states:

4. I believe I was compelled to resign/accept retirement based on my sex/male, age 66 years, and disability because:

* * *

c. On September 13, 2013 I was given notice that I was to transfer to the adult education unit until November 1, 2013, when I would be forced to retire, and if I did not accept this agreement, I would be subjected to the decision (that is, be terminated). At this point, the stress of this notice led me to be hospitalized for my condition.

Spitulski contends that this paragraph makes clear that the unlawful practices alleged in the charge are not the same as those alleged in his complaint.

{¶ 27} We have reviewed both Spitulski's OCRC charge and the complaint. While Spitulski's termination may not have been effected until December 16, 2014—after the procedures set forth in the CBA and R.C. 3319.16 were exhausted and the Board passed its resolution—Spitulski selected "discharge/termination" as the "type of discrimination" challenged in his charge (as opposed to other options from which he could choose, including "demotion" or "discipline"). He also specifically alleged in paragraph 3 of his charge that he had been "disciplined/terminated" based on his age. While we appreciate that termination had merely been "recommended" and not yet "decided" at the time he filed his charge, designating his charge as such evidences that Spitulski elected to challenge his discharge via the procedure set forth in R.C. 4112.05(B)(1). Having made this election, he was not free to file a lawsuit once the "recommendation" became a "decision."

{¶ 28} We also observe that both the charge and the complaint allege age discrimination premised on threats made by the district in an attempt "to coerce him into

14.

signing an unlawful retirement agreement." (Paragraph 68 of Spitulski's complaint, and paragraph 4(c) of his charge.) In sum, the charge and the complaint allege the same discriminatory practices.

{¶ 29} Spitulski also argues that the Board waived the defense of election of remedies by failing to plead it. The Board counters that Spitulski's filing of an OCRC charge deprived the common pleas court of subject-matter jurisdiction, and subject-matter jurisdiction can never be waived and may be raised at any time.

{¶ 30} Indeed, it is well-established that subject-matter jurisdiction may not be waived. *Shawnee Twp. v. Allen Cty. Budget Comm.*, 58 Ohio St.3d 14, 15, 567 N.E.2d 1007 (1991) ("[A] party cannot waive subject-matter jurisdiction regardless of procedural sins."). And Ohio courts have dismissed employees' age-discrimination claims against their employers for lack of subject-matter jurisdiction where the employee first elected to file a claim with the OCRC under R.C. 4112.05(B)(1). *Balent*, 93 Ohio App.3d at 424, 638 N.E.2d 1064; *Vinson*, 149 Ohio App.3d 605, 2002-Ohio-5596, 778 N.E.2d 149, at ¶ 3, 25. It was, therefore, appropriate to dismiss Spitulski's age-discrimination claim for lack of subject-matter jurisdiction regardless of when the defense was first raised by the Board.

{¶ 31} Accordingly, we find Spitulski's first assignment of error (Error "A") not well-taken.

**B. Dismissal of Spitulski's Claim for Tortious Violation of Rights.**

{¶ 32} At Spitulski's refereed hearing, the Board presented evidence concerning encounters between Spitulski and six individuals—parents, relatives, representatives, or witnesses for suspended or expelled students—during which Spitulski allegedly exhibited unprofessional behavior. Only one of those encounters was documented in a buff sheet. The Board also presented evidence concerning Spitulski's loss of hundreds of audio recordings of hearings he conducted. Again, there was no buff sheet related to this incident. Spitulski alleged in Count 2 of his complaint that the Board, "with conscious disregard for [his] union contract due process rights," breached and violated (1) the terms of his supplemental employment rights as expressed in the CBA between the Board and TAAP, and (2) his statutory right under R.C. §3319.16 to have the refereed hearing confined to the grounds stated in the notice thereof * * *." He termed this count of his complaint a "tortious violation of rights."

{¶ 33} The Board moved to dismiss this claim under Civ.R. 12(B)(1) and (6). It argued that Ohio law does not recognize a general cause of action for "tortious violation of rights." It also maintained that the rights that Spitulski claimed were violated were rights created by R.C. 3319.16 and the CBA. It insisted, therefore, that R.C. 3319.16 provides the exclusive means by which to challenge the termination of his employment, and that the State Employee Relations Board has exclusive jurisdiction over claims based on rights created by the CBA.

16.

{¶ 34} In a judgment dated May 28, 2015, the trial court dismissed Spitulski's claim for tortious violation of rights, holding that it lacked subject-matter jurisdiction because "a common-law intentional tort claim cannot be based entirely on alleged violations of rights created and/or procedures mandated by either R.C. 3319.16 or a CBA." In his second assignment of error (Error "B"), Spitulski argues that in reaching this conclusion, the trial court "improperly inferr[ed] that he had received a fair administrative hearing."

{¶ 35} The court determined that it lacked subject-matter jurisdiction over Spitulski's claim under *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities*, 64 Ohio St.3d 252, 252, 594 N.E.2d 959 (1992), which held that "[p]ublic employees do not have a private cause of action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process." It concluded that Spitulski "cannot reasonably deny that the legislative and regulatory schemes governing employment relationships and the grievance procedures in [the CBA] provide him with sufficiently broad and inclusive remedies for the Board's alleged wrongs," thus it lacked jurisdiction to consider his claim for tortious violation of rights.

{¶ 36} We find that the trial correctly dismissed Spitulski's claim, but we reach this conclusion for the more basic reason offered by the Board: a claim for "tortious violation of rights" is not a recognized cause of action under Ohio law. To the extent that

Spitulski alleges that the Board violated the disciplinary procedures and pre-hearing notice requirements contained in the CBA or in R.C. 3319.16, these alleged violations are properly considered in determining whether Spitulski was afforded a fair hearing (which we review within Spitulski's assignment of error "F" herein). *Martin v. Bd. of Edn. of the Bellevue City School Dist.*, 6th Dist. Huron No. H-12-002, 2013-Ohio-4420, ¶ 30 ("[I]f substantial and credible evidence is presented to support the charges of the board, and a fair administrative hearing is had, the common pleas court cannot substitute its judgment for that of the Board."); *Kitchen v. Bd. of Edn.*, 12th Dist. Butler No. CA2006-09-234, 2007-Ohio-2846, ¶ 17, citing *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, 139 Ohio App.3d 595, 604, 744 N.E.2d 1245 (10th Dist.2000) ("'[A]bsent a claim that the school board violated a statutory right or constitutional obligation, a trial court may not substitute its judgment for that of the board.'"). These alleged violations do not, however, provide a basis for an independent cause of action.

{¶ 37} We, therefore, find Spitulski's second assignment of error (Error "B") not well-taken.

### C. Dismissal of Spitulski's Disability Discrimination Claim.

{¶ 38} Spitulski was on medical leave from March 1, 2007, to September 1, 2008, after developing "a temporarily incapacitating disability" that allegedly resulted from the stress he experienced while previously serving as the principal of two of the District's schools. Upon his return from leave, Spitulski was "relegated" to the position of

18.

supervisor of the pupil personnel center—rather than a principal position. It was agreed, however, that his salary and "working days level" would be maintained for five years.

{¶ 39} On September 13, 2013, after the chief human resources officer allegedly attempted to coerce him to sign a retirement agreement, Spitulski "excused himself and went to a nearby hospital's emergency room." He took FMLA leave until October 17, 2013, which he attributes to a "serious health condition brought on by the District's unwarranted conduct."

{¶ 40} In Count 4 of his complaint, Spitulski alleged that his termination and the alleged attempt to coerce him into signing a retirement agreement were on account of his disability and performed with knowledge that his five-year salary and working-day-level protections were set to expire. He also alleged that he was "unlawfully suspended from his professional work; wrongfully barred from Board property, school functions and athletic events; and was humiliated in the eyes of his peers and the community."

{¶ 41} In a judgment dated October 3, 2016, the trial court granted summary judgment to the Board on Spitulski's claim for disability discrimination. Although the court found that Spitulski had offered evidence that he suffered from a disability, it concluded that Spitulski failed to offer evidence showing that the Board's stated reason for terminating him was pretext for disability discrimination. While it recognized that Spitulski had asserted that he was punished more harshly than non-disabled employees, the court found this assertion "unavailing." In his third assignment of error (Error "C"), Spitulski argues that the trial court erred by holding that pretext could not be proven by

19.

comparing Spitulski's discharge to the lesser discipline received by non-class members who had committed unprofessional conduct.

{¶ 42} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 43} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.

20.

Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

{¶ 44} To establish a prima facie case of disability discrimination under Ohio law, a plaintiff must show: (1) that he was disabled; (2) that an adverse action was taken by the employer, at least in part, because the person was disabled; and (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Hilbert v. Ohio DOT*, 2017-Ohio-488, 84 N.E.3d 301, ¶ 48 (10th Dist.), citing *Taylor v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-385, 2011-Ohio-6060, ¶ 13. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*, citing *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 14, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). Once the employer does that, the burden shifts back to the plaintiff to show "'that the proffered reason was not the true reason' for the adverse employment action." *Id.,* quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

21.

**{¶ 45}** "A plaintiff may prove disability discrimination with either direct or indirect evidence." *Anderson v. Ohio Bell Tel. Co.*, 8th Dist. Cuyahoga No. 104858, 2017-Ohio-7318, ¶ 47, citing *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 495, 741 N.E.2d 618 (8th Dist.2000). To demonstrate that the proffered reason for an adverse employment action was not the true reason—in other words, that it was pretextual—"'the plaintiff must show one of the following: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment action, or (3) that the employer's reasons were insufficient to motivate the adverse employment action.'" *Dunn v. GOJO Industries*, 2017-Ohio-7230, 96 N.E.3d 870, ¶ 15 (9th Dist.), quoting *Chiancone v. City of Akron*, 9th Dist. Summit No. 26596, 2014-Ohio-1500, ¶ 18. The court in *Dun* explained:

> Under the first method, the plaintiff provides evidence that the alleged reason for [his or] her discharge is "factually false." * * * Under the second method, the plaintiff "admit[s] the factual basis underlying the employer's proffered explanation and further admit[s] that such conduct could motivate dismissal[, but] attempts to indict the credibility of [his or her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." * * * Under the third method, the plaintiff presents evidence "that similarly situated employees were treated differently."

*Dunn* at ¶ 15, citing *Dukes v. Associated Materials, L.L.C.*, 9th Dist. Summit No. 27091, 2014-Ohio-4322, ¶ 21.

{¶ 46} The Board claims that it terminated Spitulski's employment because he acted unprofessionally towards parents, witnesses, and a non-attorney parent advocate who regularly appeared at disciplinary hearings; he failed to maintain accurate hearing records, and he lost several months of audio-taped hearings—reasons that Spitulski claims were pretextual. The Board also denies that Spitulski suffered from a disability, that he was replaced by a non-disabled employee, or that he was treated less favorably than other similarly-situated, non-disabled employees.

{¶ 47} The trial court found that Spitulski presented evidence that he was disabled—he suffered chest pain for which he was hospitalized—but held that he failed to establish pretext. Specifically, the court acknowledged Spitulski's claim that he was treated more harshly than similarly-situated, non-disabled employees, but found his claim "unavailing in that regard."

{¶ 48} Spitulski argued in his May 11, 2016 summary-judgment opposition that other employees received less severe punishment for disciplinary infractions. He claimed to have disciplinary information for 12 additional employees who he alleged were treated more favorably. In other words, Spitulski sought to show that the Board's reasons for discharging him were insufficient given that similarly-situated employees were treated differently.

23.

{¶ 49} Spitulski argues here that "there was no question [that he] possessed valid evidence that similarly-situated non-disabled employees had been disciplined less severely than he," and he claims that he "advised the court in intricate detail regarding his evidence that four Board employees who had engaged in 'unprofessional conduct' had not been discharged." While this may be true, we find that Spitulski wholly failed to provide proper summary-judgment evidence in support of these assertions as required by Civ.R. 56(C) and (E).

{¶ 50} Civ.R. 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶ 51} Civ.R. 56(E) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

**{¶ 52}** To establish pretext based on an employer's more favorable treatment of similarly-situated, non-protected employees, the plaintiff must present evidence to show that those non-protected employees are, in fact, "comparables" who are similarly-situated in all relevant respects. *Smith v. ExpressJet Airlines, Inc.*, 8th Dist. Cuyahoga No. 101336, 2015-Ohio-313, ¶ 20; *Speller v. Toledo Pub. Schools Bd. of Edn.*, 2017-Ohio-7994, 98 N.E.3d 1066, ¶ 26 (6th Dist.)  Some factors to be considered in determining whether comparables are similarly-situated are "whether the comparable employees have the same supervisor, have been subject to the same standards, have engaged in the same conduct, and have mitigating or distinguishing factors." *Greene v. City of Cincinnati*, 1st Dist. Hamilton No. C-070830, 2008-Ohio-4908, ¶ 18.

**{¶ 53}** Here, Spitulski offered no documents and no affidavit from any witness with personal knowledge who could attest to other employees' discipline or to the facts establishing that those employees were, in fact, similarly-situated.  Spitulski presented only the argument of counsel.  Argument of counsel is not "evidence," and is not sufficient to defeat summary judgment.  *See Haase v. Mather Co.*, 6th Dist. Lucas No. L-84-095, 1984 Ohio App. LEXIS 10649, *4-5 (Aug. 24, 1984) (reversing summary judgment in favor of employee where only basis for key finding by court was written argument of counsel, which is not evidence).  *Grove v. Fresh Mark, Inc.*, 156 Ohio App.3d 620, 2004-Ohio-1728, 808 N.E.2d 416, ¶ 24 (7th Dist.) ("Passionate argument of counsel is not evidence.").

25.

{¶ 54} Because Spitulski failed to present proper summary-judgment quality evidence in support of his contention that other similarly-situated employees were treated more favorably, we conclude that the trial court properly granted summary judgment in favor of the Board as to Spitulski's disability discrimination claim.

{¶ 55} We find Spitulski's third assignment of error (Error "C") not well-taken.

## D. Dismissal of Spitulski's Intentional Infliction of Emotional Distress Claim.

{¶ 56} In Count 6 of his complaint, Spitulski alleged that the Board inflicted emotional distress upon him when it "outrageously ignor[ed] his due process rights under the [CBA]," "outrageously ignor[ed] his statutory rights at the R.C. 3319.16 hearing," "attempt[ed] to coerce him into signing an unlawful so-called retirement agreement," "threaten[ed] to convert his paid suspension to an unpaid suspension before the DOE referee had issued any decision," and "retaliat[ed] against him following his filing of charges with the [OCRC]." The trial court granted summary judgment in favor of the Board on this claim, holding that the claim was preempted by R.C. Chapter 4117 because it arises from or depends on rights created by the CBA. In his fourth assignment of error (Error "D"), Spitulski claims that this was error insofar as the trial court relied upon "inapplicable private sector contract preemption law."

{¶ 57} Spitulski argues that the notion of "contract preemption" originates in federal law developed under the National Labor Relations Act, which is explicitly inapplicable to state political subdivisions. The Board argues that Ohio courts regularly

26.

apply R.C. Chapter 4117 preemption in cases involving public sector employees, including public school districts.

{¶ 58} "Ohio courts will dismiss IIED claims for lack of subject-matter jurisdiction when the allegations underlying the claim are governed by a collective bargaining agreement with a grievance procedure requiring final and binding arbitration." *Marzano v. Struthers City School Dist. Bd. of Edn.*, 2017-Ohio-7768, 97 N.E.3d 1116, ¶ 17 (7th Dist.). Whether a common-law IIED claim is preempted by a CBA must be determined on a case-by-case basis taking into account the factual conduct alleged in support of the plaintiff's claim. *Id.* at ¶ 20, citing *Gudin v. W. Res. Psych. Hosp., 10th Dist. Franklin No. 00AP-912, 2001 Ohio App. LEXIS 2634,*3 (June 14, 2001). An IIED claim "predicated on allegedly wrongful acts directly related to the terms and conditions of a plaintiff's employment are generally preempted by the collective bargaining agreement." *Gudin* at *10. On the other hand, an IIED claim "premised upon personally abusive conduct by the employer and its supervisors (or conduct that is not arguably sanctioned by the labor contract)," is not preempted. *Id.* at *11.

{¶ 59} While some courts have dismissed IIED claims under preemption principles, we find here that Spitulski's IIED claim must be dismissed for a more basic reason that was also raised by the Board: his IIED claim fails as a matter of law. *See id.* at *14 (finding that trial court erred in ruling that it lacked jurisdiction to consider appellant's IIED claim, but finding error not prejudicial because employee's factual allegations did not support IIED claim as a matter of law).

27.

{¶ 60} To prevail on his claim for IIED, a plaintiff must prove (1) that the actor intended to cause emotional distress or knew or should have known that his or her actions would result in serious emotional distress to plaintiff; (2) that the actor's conduct was so "extreme and outrageous" as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community"; (3) that the conduct proximately caused psychic injury to the plaintiff; and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it. *Id.* at *14-15. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain an IIED claim. *McJennett v. Lake Waynoka Property Owners*, 12th Dist. Brown No. CA2013-05-006, 2013-Ohio-5767, ¶ 33. Generally, the facts must be such that upon hearing a recitation of those facts, an average member of the community would exclaim, "Outrageous!" *Jones v. Wheelersburg Local School Dist.*, 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, ¶ 39.

{¶ 61} The issue of whether conduct rises to the level of "extreme and outrageous" is a question of law. *Meminger v. Ohio State Univ.*, 10th Dist. Franklin No. 17AP-489, 2017-Ohio-9290, ¶ 14, citing *Jones at* ¶ 41. A number of courts have dismissed IIED claims where the facts alleged were not sufficiently extreme and outrageous.

{¶ 62} For example, in *Shepard v. Griffin Services, Inc.*, 2d Dist. Montgomery No. 19032, 2002-Ohio-2283, ¶ 80-88, the court found the employer's conduct not sufficiently extreme and outrageous where it (1) purposefully discriminated against the employee

28.

based on her sex by treating her less favorably than other similarly-situated male employees; (2) denied her the opportunity to upgrade her position and increase her pay level; (3) maliciously and recklessly defamed her reputation and character by accusing her of fraud, falsification of records, and deception, without properly ascertaining the truth of the accusations; (4) published private and confidential information about the employee's counseling; (5) retaliated against the employee for making complaints of discrimination; (6) terminated her employment based upon false accusations and an incomplete investigation of events; and (7) breached its contract with the employee.

{¶ 63} In *Smith v. Lebanon City Schools*, 12th Dist. No. CA99-02-024, 1999 Ohio App. LEXIS 5241 (Nov. 8, 1999), the court concluded that the employer's conduct was not sufficiently extreme and outrageous where the employer (1) screamed and yelled at the employee; (2) falsely accused the employee of causing problems in the treasurer's office and of stealing money; (3) repeatedly berated the employee in front of other people; (4) called the employee "moronic and uneducated"; and (5) berated the employee for being a woman.

{¶ 64} In *Branan v. Mac Tools*, 10th Dist. No. 03AP-1096, 2004-Ohio-5574, ¶ 15-17, 30-31, the court concluded that the employer's conduct was not sufficiently extreme and outrageous where it (1) interrogated the employee for several hours, twice refusing his requests to leave; (2) shouted and exhibited some degree of physical intimidation; (3) repeatedly called the employee a liar and a corporate spy; (4) threatened the employee by telling him that he would never get another job in the industry and

29.

would be unable to feed his newborn child; (4) went through the employee's personal belongings in his office and briefcase; and (5) observed the employee's home and took pictures of the home and vehicles parked in front of the home.

{¶ 65} And in *Jones*, 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, ¶ 49, the court concluded that the employer's conduct was not sufficiently extreme and outrageous where it (1) failed to act in a professional manner when terminating her; (2) badgered her for over four hours concerning allegedly misappropriated funds; (3) denied her request for an attorney and sarcastically informed her that she did not need a lawyer if she was innocent; (4) denied her request to permit her husband to be present during the four-hour questioning; and (5) falsely accused her of theft.

{¶ 66} Given the holdings in these cases, we find that the Board's conduct in allegedly ignoring Spitulski's due process rights under the CBA and R.C. 3319.16, attempting to coerce him into signing an unlawful retirement agreement, threatening to convert his paid suspension to an unpaid suspension (although never actually doing so), and retaliating against him following his filing of an OCRC charge, was not sufficiently extreme and outrageous as a matter of law.

{¶ 67} We, therefore, find Spitulski's fourth assignment of error (Error "D") not well-taken.

### E. Dismissal of Spitulski's Retaliation Claim.

{¶ 68} In Count 5 of his complaint, Spitulski alleges that the Board retaliated against him for filing his September 20, 2013 charge with the OCRC by (1) threatening to

30.

convert his paid suspension into an unpaid suspension, and (2) rejecting the referee's decision which recommended against termination. He later elaborated that his refusal to sign the retirement agreement on September 13, 2013, and his request of the right-to-sue letter issued on October 16, 2014, constituted additional protected activity in which he engaged, and that his suspension constituted an additional adverse employment action committed by the Board in retaliation for engaging in that protected activity.

{¶ 69} Spitulski brought this claim under R.C. 4112.02(I), which provides that it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To establish a prima-facie case of retaliation, a plaintiff must show that "(1) he or she engaged in a protected activity, (2) the employer was aware that the plaintiff had engaged in that activity, (3) the employer took an adverse employment action against the plaintiff, and (4) there is a casual (sic) connection between the protected activity and adverse action." *Smith* at ¶ 48. Importantly, "to prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor—not just a motivating factor—in the employer's decision to take adverse employment action." (Internal citations and quotations omitted.) *Little York Tavern v. Lane*, 2017-Ohio-850, 86 N.E.3d 715, ¶ 15 (2d Dist.).

31.

**{¶ 70}** "Once an employee establishes a prima facie case, the burden shifts to the employer to 'articulate some legitimate nondiscriminatory reason for' its action." (Citations omitted.) *Id.* at ¶ 19. If the employer carries its burden, the burden then shifts back to the employee to prove that the employer's stated reason is pretextual. *Id.*

**{¶ 71}** The timeline of events relative to Spitulski's retaliation claim is as follows:

- May 31, 2013: Gault requested internal disciplinary hearing

- August 19, 2013: Heldt conducted internal disciplinary hearing

- September 9, 2013: Heldt issued her written recommendation of termination

- September 13, 2013: Spitulski refused to sign proposed retirement agreement

- September 20, 2013: Spitulski filed his OCRC charge

- October 3, 2013: Spieldenner wrote letter indicating her concurrence with Heldt termination recommendation and informing Spitulski of suspension with pay

- October 11, 2013: Spitulski requested to arbitrate termination recommendation

- February 14, 2014: Spieldenner sent letter advising of her intent to recommend unpaid suspension

- May 5-6, 2014: Referee conducted hearing

- July 17, 2014: OCRC granted Spitulski's request to withdraw his charge

- August 14, 2014: Referee issued his recommendation against termination

- October 16, 2014: Spitulski received notice of right to sue

- December 16, 2014: Board passed resolution rejecting referee's recommendation and terminating Spitulski's employment

**{¶ 72}** In a decision dated November 13, 2017, the trial court granted summary judgment to the Board on Spitulski's retaliation claim, finding that he failed to show a causal connection between his protected activity and any adverse employment action. It found that Spitulski offered no evidence that would raise an inference of retaliation because too much time had passed between when Spitulski engaged in the protected activity (the filing of his OCRC charge) and when the adverse employment action (his termination) occurred. It also found that Spitulski's allegedly-biased supervisors (Baker and Gault) had no further involvement in his disciplinary matter after he filed his OCRC charge. While the court acknowledged that Spitulski was notified that Spieldenner intended to recommend that his paid suspension be converted to unpaid, it emphasized that this never happened. And with respect to the right-to-sue letter, it observed that even assuming that requesting this letter constituted protected activity, the Board reached its decision without knowing that the letter had been received by its attorney.

**{¶ 73}** In his fifth assignment of error (Error "E"), Spitulski claims that the trial court erred because in dismissing his claim, it "relied on dicta in a case that supposedly rejected the 'cat's paw' theory of liability."

**{¶ 74}** "A 'cat's paw' is a person used by another to accomplish the other's purposes." *Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, 997 N.E.2d 597, ¶ 55 (10th Dist.), citing *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th

33.

Cir.2006). Under a "cat's paw" theory of liability, an "unbiased decisionmaker is a cat's paw in situations where a biased subordinate, who lacks decisionmaking power, uses the unbiased decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory or retaliatory employment action." *Id.* Even when considering a retaliation claim under a "cat's paw" theory, courts require the plaintiff to demonstrate a direct causal connection between the subordinate's discriminatory animus and the decisionmaker's adverse employment action. *Crawford v. Notar*, 11th Dist. Trumbull No. 2015-T-0133, 2016-Ohio-3010, ¶ 34, citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 179 L.E.2d 144 (2011).

{¶ 75} Although Spitulski's stated assignment of error specifically challenges what he characterizes as the court's rejection of the cat's paw theory of liability, his argument in support of his assignment of error identifies the following three issues to be resolved: (1) whether his refusal to sign "the unlawful retirement agreement" was protected activity; (2) whether receipt by the Board's attorney of the notice of right to sue is knowledge of protected activity that may properly be imputed to the Board; and (3) whether there exists an issue of material fact that his protected activity was the but-for causation of his termination.

{¶ 76} Even accepting that Spitulski's refusal to sign the retirement agreement and request of the right-to-sue letter constituted protected activity, Spitulski has failed to establish a prima facie case of retaliatory discharge for the following reasons.

34.

**{¶ 77}** First, we agree with the trial court that Spitulski cannot show a causal connection because the time between the protected activity and the adverse employment action is too remote. "In establishing whether there is a causal connection between the protected activity and the adverse employment action, courts have looked at the amount of time between the two events." *Baker v. Buschman Co.*, 127 Ohio App.3d 561, 568, 713 N.E.2d 487 (12th Dist.1998). To warrant an inference of retaliatory motivation, the adverse employment action must have occurred sufficiently close in time to the employee's engagement in protected activity. *Id.,* citing In *Neal v. Hamilton County*, 87 Ohio App.3d 670, 622 N.E.2d 1130 (1st Dist.1993). Courts have found intervals of even two to four months insufficient to show a causal connection. *See Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 41 (8th Dist.) ("Courts have repeatedly held that intervals of two to four months between the protected activity and the adverse action are insufficient to show a causal connection."). *See also Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 50 (finding no causal connection where protected activity occurred on August 7, 2006, and purported adverse action occurred on September 27, 2006).

**{¶ 78}** Here, Spitulski's termination was not finalized until December of 2014—two months after Spitulski last engaged in arguably protected activity. While Spitulski argues that, effectively, only two business days had passed (given the Board's monthly meeting schedule), we find this argument unpersuasive. Spitulski's termination was

35.

simply too remote in time from his engagement in protected activity to establish the causal connection necessary to support his retaliation claim.

{¶ 79} We also acknowledge that Spitulski claims that his suspension was an adverse employment decision that occurred within days of his engaging in protected activity. However, in *Perez v. Theller*, 6th Dist. Sandusky No. S-10-053, 2011-Ohio-2176, ¶ 16, we held that "[t]he material adversity of a suspension is determined by the context under which it is imposed. Duration and lost income are the critical factors. Suspensions *with pay* are not deemed to be adverse, but if imposed even temporarily without pay, they are." Here, despite Spieldenner's later recommendation to convert Spitulski's paid suspension to an unpaid one, Spitulski's suspension was entirely with pay. We, therefore, find that it did not constitute an adverse employment action.

{¶ 80} In addition to failing to establish a causal connection, we conclude, as did the trial court, that Spitulski cannot show that the Board was aware of the notice of right to sue. The Board's attorney clearly was aware of the notice letter, but it is undisputed that the Board members themselves were unaware. Spitulski claims that the Board's attorney's knowledge must be imputed to the Board members. But the Board cites *Bahar v. City of Youngstown*, 7th Dist. Mahoning No. 09 MA 55, 2011-Ohio-1000, ¶ 40, to support its contention that the Board's attorney's knowledge cannot be imputed to the individual Board members in this case.

{¶ 81} In *Bahar*, the appellant claimed that the city law director knew she had engaged in protected activity in the ten days before her discharge by city council. The

36.

appellant sought to establish that the law director's knowledge should be imputed to council members because "the Law Director indisputably had knowledge of [her] protected activity during the ten days immediately before [her] discharge[, and] [a]s legal counsel to the City Council, [the law director] would have been derelict in her duties had she not informed the council members of [Appellant's] complaints that had been made so close in time to the legislative act of firing her." *Id.* at ¶ 40. The court held that the inference appellant was asking it to make was directly contradicted by evidence that the law director considered her conversations with appellant to be privileged, and, therefore, did not repeat her statements to the members of city council. Accordingly, it held that the appellant failed to establish that any member of council knew of her protected activity.

{¶ 82} Here, too, there is no evidence that the Board members knew of the right-to-sue letter. To the contrary, the Board presented affidavits from its Board members indicating that they were *not* told of the right-to-sue letter. Under these circumstances, Spitulski has failed to show that the Board was aware of the protected activity at issue.

{¶ 83} Because Spitulski has failed to establish a prima facie case that he was terminated for engaging in protected activity, we find that the trial court properly dismissed his retaliation claim. We, therefore, find Spitulski's fifth assignment of error (Error "E") not well-taken.

**F. The Trial Court's Disposition of Spitulski's Administrative Appeal.**

{¶ 84} In its judgment dated September 10, 2015, the trial court affirmed the Board's decision terminating Spitulski's employment contract. In his sixth assignment of

37.

error (Error "F"), Spitulski argues that in doing so, the trial court improperly "assess[ed] the Board's resolution, rather than the referee's findings of fact, and then appl[ied] an incorrect evidentiary standard in that assessment."

{¶ 85} The trial court found that the Board complied with applicable law when it rejected a number of the referee's findings of fact as against the weight of the evidence and when it rejected his recommendation based on its interpretation of the significance of his factual findings. It further found that the Board presented substantial and credible evidence to support its charges against Spitulski and that Spitulski had a fair administrative hearing. As such, the court refused to substitute its judgment for the Board's "even if it disagrees with the Board's ultimate decision, which it does not."

{¶ 86} Spitulski maintains that the trial court applied an improper standard of review and erred in concluding that he had received a fair administrative hearing. R.C. 3319.16 provides that the contract of any teacher[3] employed by a board of education may not be terminated "except for good and just cause." Before terminating a teacher's contract, "the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration." R.C. 3319.16. The teacher may

---

[3] Although R.C. 3319.16 refers to any "teacher," R.C. 3319.09(A) defines "teacher" to include "all persons licensed to teach and who are employed in the public schools of this state as * * * supervisors," and R.C. 3319.02(D)(3) provides that the termination of school administrators "shall be pursuant to section 3319.16 of the Revised Code." Spitulski was licensed to teach and employed by the District as supervisor of the pupil personnel center.

38.

then file with the treasurer a written demand for a hearing before the board or before a referee. *Id.* Where the hearing is conducted by a referee, he or she must file a report within ten days after the hearing. *Id.* "After consideration of the referee's report, the board, by a majority vote, may accept or reject the referee's recommendation on the termination of the teacher's contract." *Id.* The order of termination must state the grounds for termination. *Id.*

{¶ 87} The Ohio Supreme Court—applying an earlier iteration of R.C. 3319.16— explained in *Aldridge v. Huntington Local School Dist. Bd. of Edn.*, 38 Ohio St.3d 154, 157, 527 N.E.2d 291 (1988), that "the decision to terminate a teacher's contract is comprised of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute [good and just] cause as defined by statute." The referee is primarily responsible for making findings of fact, however, the school board has "the right and the responsibility to review those findings." *Id.* at 158. A school board must accept the referee's findings of fact unless they are "against the greater weight, or preponderance, of the evidence." *Id.* It then has the discretion to accept or reject the recommendation of the referee "unless such acceptance or rejection is contrary to law." *Id.*

{¶ 88} In weighing the evidence, "the board must give deference to the fact that it is the referee who sees and hears the witnesses." *Id.* If the board does not accept the referee's recommendation, it must indicate whether it rejected the referee's findings as being against the preponderance of the evidence, or whether it accepted the referee's

39.

factual findings but rejected the recommendation based upon a different interpretation of the significance of those facts. *Id.*

{¶ 89} After the board has rendered a decision to terminate a teacher's contract, the teacher may then appeal the decision by filing an original action in the court of common pleas. R.C. 3319.16. "The court shall examine the transcript and record of the hearing and shall hold such additional hearings as it considers advisable, at which it may consider other evidence in addition to the transcript and record." *Id.* It may then grant or deny the relief requested in the teacher's complaint. *Id.* In doing so, however, the common pleas court "may not reverse the Board's termination order unless it finds that the order is not supported by or is against the weight of the evidence." *Speller v. Toledo Pub. School. Dist. Bd. of Educ.,* 2015-Ohio-2672, 38 N.E.3d 509, ¶ 21 (6th Dist.). It "cannot substitute its judgment for the judgment of the board where a fair administrative hearing is had and there is substantial and credible evidence in the record to support the board's decision." *Fox v. Bd. of Edn. of the Huron City School Dist.*, 6th Dist. Erie Nos. E-16-076, E-16-077, 2017-Ohio-7984, ¶ 18.

{¶ 90} The teacher or the board may appeal the decision of the court of common pleas to a court of appeals. Our review of the trial court's decision is narrow: absent an abuse of discretion, we must affirm the trial court's decision. *Speller* at ¶ 43.

{¶ 91} In this case, the Board rejected the referee's recommendation. It found that "the Referee's findings of fact are against the manifest weight of the evidence, and * * * the Referee wrongly concluded that TPS lack[ed] good and just cause to terminate Mr.

40.

Spitulski's employment." In other words, it disagreed with both the referee's factual findings and his findings concerning the significance of the facts. In an eight-page resolution, with numerous references to the lengthy hearing transcript, it explained why.

{¶ 92} The Board found that (1) contrary to the referee's conclusion, Spitulski had prior discipline insofar as he was "buff-sheeted" on February 13, 2012, for his treatment of a parent advocate; (2) the referee indicated that the district had received five other complaints about Spitulski's lack of professionalism, but left out a sixth incident—that it characterized as the most serious—during which Spitulski swore at a student; (3) the referee incorrectly concluded that the other five complaints were "without merit"; (4) despite the referee's opinion to the contrary, the directive that Spitulski maintain records of hearings was not unreasonable; and (5) evidence of Spitulski's wrongdoing constituted "good and just cause" to terminate his employment. It characterized Spitulski's instances of misconduct as "serious matters that are directly related to [his] professional responsibilities, directly involve students, and are hostile to the school community."

{¶ 93} Spitulski argues that the trial court applied an inapplicable standard of review here. He maintains that a board's decision is reviewed under a "preponderance-of-the-evidence" standard, and not a "substantial and credible evidence" standard. We conclude that Spitulski is mistaken. In fact, while *the Board* reviews the referee's findings of fact under a "preponderance-of-the-evidence" standard, *the trial court* reviews the Board's decision under a "substantial-and-credible-evidence" standard. *See*

41.

*Bertolini*, 139 Ohio App.3d at 604, 744 N.E.2d 1245 and *Strohm v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. Franklin No. 97APE07-972, 1998 Ohio App. LEXIS 1375, *12 (Mar. 31, 1998) ("If substantial and credible evidence is presented to support the charges of the board, and a fair administrative hearing is had, the reviewing court cannot substitute its judgment for the judgment of the administrative authorities."). The trial court did not apply an incorrect standard. And under the narrow, abuse-of-discretion standard that *this court* is required to apply, we cannot say that the trial court abused its discretion given the detailed explanation provided by the Board for rejecting the referee's factual findings and reaching a different conclusion as to the significance of the facts.

{¶ 94} Spitulski also claims that he was not afforded a fair hearing because the hearing was not "confined to the grounds stated in the notice thereof." He contends that the Board presented evidence at the refereed hearing about several parent encounters about which he had not been provided notice.

{¶ 95} R.C. 3319.16 requires a board to furnish a teacher written notice signed by its treasurer of its intention to consider termination of the teacher's contract "with full specification of the grounds for such consideration." "While the term 'full specification' is not defined in the statute, it has been found that evidence of other instances of alleged misconduct which are 'interrelated' to the grounds stated in the notice are permissible at the hearing." *Speller* 2015-Ohio-2672, 38 N.E.3d 509, at ¶ 26. "The purpose of R.C. 3319.16 is to provide the essential requirements of due process: notice and an

42.

opportunity to respond." *Id.,* citing *Badertscher v. Liberty-Benton School Dist. Bd. of Edn.*, 2015-Ohio-1422, 29 N.E.3d 1034 (3d Dist.).

{¶ 96} It is clear from the transcript of the refereed hearing that Spitulski's counsel was well-prepared and was able to effectively cross-examine all parent witnesses who testified at the refereed hearing. What's more, he presented testimony from his own witnesses who countered the Board's allegations. Indeed, the referee was persuaded that the Board's allegations lacked merit. Under these circumstances, we cannot say that Spitulski did not receive a fair hearing.

{¶ 97} We find Spitulski's sixth assignment of error (Error "F") not well-taken.

## G. Dismissal of Spitulski's Claim for Punitive Damages and Attorney Fees.

{¶ 98} In his seventh assignment of error (Error "G"), Spitulski claims that the trial court erred in dismissing his claims for punitive damages and attorney fees. Given our resolution of the preceding six assignments of error, it is unnecessary for us to address Spitulski's seventh assignment of error (Error "G").

## III. Conclusion

{¶ 99} The trial court properly dismissed Spitulski's age-discrimination claim for lack of subject-matter jurisdiction because Spitulski elected to pursue an administrative remedy by filing an OCRC charge. We reach this conclusion notwithstanding the fact that he later withdrew his charge. We, therefore, find Spitulski's first assignment of error (Error "A") not well-taken.

43.

{¶ 100} Ohio does not recognize a cause of action for tortious violation of rights under a CBA or R.C. 3319.16. We, therefore, find Spitulski's second assignment of error (Error "B") not well-taken.

{¶ 101} Spitulski failed to offer proper summary-judgment quality evidence in support of his assertion that similarly-situated non-class members were treated more favorably. His disability discrimination claim was, therefore, properly dismissed. We find Spitulski's third assignment of error (Error "C") not well-taken.

{¶ 102} Spitulski's claim for intentional infliction of emotional distress fails as a matter of law because the conduct alleged was not sufficiently extreme and outrageous. We, therefore, find Spitulski's fourth assignment of error (Error "D") not well-taken.

{¶ 103} Spitulski's claim for retaliation was properly dismissed where he failed to demonstrate a causal connection between his termination and his engagement in protected activity, and failed to show that the individual Board members knew of his most recent engagement in protected activity. We, therefore, find Spitulski's fifth assignment of error (Error "E") not well-taken.

{¶ 104} The trial court did not abuse its discretion in affirming the Board's termination of Spitulski's employment where there existed competent and credible evidence to support its decision and he was afforded a fair hearing. We, therefore, find Spitulski's sixth assignment of error (Error "F") not well-taken.

{¶ 105} And given our resolution of Spitulski's first six assignments of error, we need not address his seventh assignment of error (Error "G").

44.

{¶ 106} Accordingly, we affirm the judgments of the Lucas County Court of Common Pleas dated May 28, 2015, September 10, 2015, February 3, 2016, October 3, 2016, August 23, 2017, September 13, 2017, and November 13, 2017.  Spitulski is ordered to pay the costs of this appeal under App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE